No. 82-270

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

_____

ROBERT EWALT, JERRY M. HENSLEY,
DOROTHY EWALT, and EVERETT EWALT,

        Plaintiffs and Respondents,

   -vs-

CHARLES SCOTT,

        Defendant and Appellant.

_____

Appeal from: District Court of the Sixteenth Judicial District,
In and for the County of Carter,
The Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

    For Appellant:

        Lucas & Monaghan; Thomas Monaghan, Miles City,
Montana

    For Respondents:

        Gene Huntley, Baker, Montana

_____

Submitted on Briefs:  March 17, 1983

Decided:  November 16, 1983

Filed:    NOV 16 1983

_____
              Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Charles Scott appeals from an order of the Carter County District Court that refused to set aside his default in a wrongful death action filed against him. He also appeals from the trial court's order refusing to let him have a jury trial on the issue of damages. On the question of damages, he alleges that the damages awarded to plaintiffs are excessive and that the trial court erred in admitting evidence in support of his childrens' (all adults) claim for mental anguish.

We hold that the trial court abused its discretion in refusing to set aside the default, and therefore vacate the judgment and remand for further proceedings. We need not address the issue of whether defendant has a right to jury trial on damages after his default had been entered. The issue of mental anguish is controlled by our decision in Dawson v. Hill & Hill Truck Lines (Mont. Decided October 21, 1983), ___ P.2d ___, 40 St.Rep. 1689. In Dawson, we held that ". . . damages for the sorrow, mental distress or grief of the parents of a deceased minor are recoverable in a wrongful death action brought pursuant to section 27-1-512, MCA." The right to recover damages for this element of damages must also be recognized for the children who bring an action for the wrongful death of a parent, whether the children be unemancipated or adults. We confine the remainder of this opinion to the default judgment issue.

On March 19, 1976, the defendant Charles Scott (who was employed as a truck driver by England) struck and killed 80 year old Charles Ewalt on a street in Alzada, Montana.

Shortly after Ewalt's death, an inquest was held and Scott testified as to what happened. Other than himself, there were no eyewitnesses. The coroner's jury found no culpable negligence on the part of Scott and no criminal charges were filed. Scott returned to Utah shortly after the inquest. Shortly after Scott returned to Utah, Scott left England's employ, whose business offices are located at Salt Lake City, Utah. Scott did not have a forwarding address for his former employer.

More than a year after the accident, on April 11, 1977, the plaintiffs (all adult children of the deceased) filed a wrongful death action against England and Scott seeking damages for the death of their father. On May 3, 1977, England was personally served in Salt Lake City and his office manager accepted service on behalf of Scott. On May 24, 1977, a law firm representing both England and Scott filed a motion to dismiss with the Carter County District Court.

Nothing happened until a year later, June 15, 1978, when plaintiffs noticed the deposition of Scott for July 13, 1978, to be taken at Ekalaka, Montana. Scott could not be located and the deposition was postponed. Almost two years passed when the plaintiffs moved the trial court to enter a default judgment against Scott for his failure to appear for the deposition scheduled two years earlier.

The trial court heard this motion on June 6, 1980, and on June 16, 1980, the court entered an order giving counsel for England and Scott 60 days from the date of the order to report on any progress in locating Scott. Scott could not be located, however, and the plaintiffs renewed their motion for a default judgment against Scott. Pursuant to plaintiffs'

request, the trial court awarded a $105,000 judgment to plaintiffs against defendant Scott only. The plaintiffs then dismissed the action against England, without prejudice. After this entry of default on September 15, 1980, counsel for Scott moved to file an answer and a demand for jury trial as to damages. The trial record does not reflect whether the trial court actually ruled on these motions.

Nine more months had passed when Scott was finally located in March 1981. Through counsel, Scott filed a motion to set aside the default. The uncontradicted deposition testimony of Scott indicates that he had no idea a lawsuit had been filed against him until he was finally located near his home in another state. The court, however, refused to set aside its order of default and proceeded to a hearing of evidence on the question of damages.

The hearing on damages took place on April 13, 1982, and on May 20, 1982, the court entered its findings, conclusions and order and awarded plaintiffs $100,000 in general damages--confined solely to the grief and sorrow of the adult children, and $1,760 in special damages (representing the funeral bill).

The trial court entered Scott's default because he failed to appear at a deposition scheduled in 1978, even though he had never been personally served and had never been notified of the deposition or even that a civil wrongful death action had been filed against him. His deposition, uncontradicted by any other evidence, clearly demonstrated a lack of knowledge on his part that he had been sued. In addition, there is every indication in the record that Scott's former employer, England, and counsel here, made

- 4 -

reasonable efforts to locate Scott to tell him about the pending lawsuit, to no avail.

The trial court entered the default against Scott and refused to set it aside apparently because it believed England had accepted service on behalf of Scott and had thereby caused his disappearance and the inability to locate him. Not a scintilla of evidence suggests, however, that England had caused Scott's disappearance or the inability of the parties to locate him. In fact, the trial court expressly found that plaintiffs had not proved willfulness or bad faith, but somehow it reasoned that England was at fault and that Scott should therefore be punished.

In Owen v. F. A. Buttrey Co. (Mont. 1981), 627 P.2d 1233, 38 St.Rep. 714, we stated that sanctions such as dismissal or defaults are tools that may be used against parties who deliberately flout the discovery process or disobey the orders of trial courts. However, we also stated that such extreme sanctions are not permitted unless there is a showing of willfulness. Here, the trial court not only expressly found that willfulness did not exist, the record contains no evidence to support a finding of willfulness. Scott can hardly be faulted when he had no idea he had been sued; and the record demonstrates that England made a reasonable effort to find Scott. Scott was finally located through the efforts of private investigators representing England.

The order refusing to set aside the default judgment is vacated and this cause is remanded to the District Court for further proceedings consistent with the opinion.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____

_____
            Justices

- 6 -