No. 90-483

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

JOHN R. PENCE, individually, and
JUDY L. PENCE, individually and as
Guardian Ad Litem of BRITTNEY PENCE
and JARED PENCE,
              Plaintiffs and Appellants,

    v.

BINGHAM R. FOX and BARBARA A. FOX,
d/b/a RAINTREE PRODUCTS; HAROLD
STRUCK and BETTY STRUCK, d/b/a
ALL SEASONS SPAS; KELLER SUPPLY CO.,
d/b/a KELLER'S LEISURE SUPPLY; and
JOHN DOES I-V,

              Defendants and Respondents.

**FILED**

JUN 11 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Joel Roth, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Norman L. Newhall and Floyd D. Corder argued;
                    Alexander, Baucus & Linnell, Great Falls, Montana

        For Respondent:

                Tracy A. Axelberg argued, James A. Aiken (Raintree
                Products); Jardine, Stephenson, Blewett and Weaver,
                Great Falls, Montana
                Lee LeVeque (All Season Spas); Conklin, Nybo,
                LeVeque & Murphy, Great Falls, Montana
                Keith Strong argued (Keller Supply); Dorsey &
                Whitney, Great Falls, Montana

        For Amicus Montana Trial Lawyers Association:

                W. William Leaphart argued; Leaphart Law Firm,
                Helena, Montana


                        Heard:     April 19, 1991
                        Decided:   June 11, 1991

Filed:

_____
            Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs brought this suit arising from personal injuries sustained by John R. Pence. The District Court for the Eighth Judicial District, Cascade County, granted defendants' motions, pursuant to Rule 12(b), M.R.Civ.P., to dismiss loss of consortium claims of Brittney and Jared Pence, brought by their mother and guardian, Judy L. Pence. Mrs. Pence, as guardian for the children, appeals. We reverse and remand for further proceedings on the merits.

The issue as restated is: Do minor children have a separate cause of action for loss of parental consortium when a parent is tortiously injured by a third party and rendered a quadraplegic?

The District Court determined that the children did not state a claim upon which the Court could grant relief. The District Court expressly directed immediate entry of judgment against the children in the interest of judicial economy. The action in behalf of the parents is pending the outcome of this appeal so that if the children do have a claim upon which the Court could grant relief, the cases can be tried together. As alleged in plaintiffs' complaint, the facts are essentially as follows:

John Pence is the husband of plaintiff, Judy Pence, and father of plaintiffs, Brittney and Jared Pence. Defendants Harold Struck and Betty Struck, d/b/a All Seasons Spas, sold and installed a hot tub in the yard of Connie Jensen. The hot tub was manufactured by defendants Bingham R. Fox and Barbara A. Fox, d/b/a Raintree Products. On January 2, 1988, Mr. Pence was using the hot tub.

1

He emerged from the hot tub and trotted a short distance into the yard whereupon, suddenly and without warning, he was rendered immediately unconscious and collapsed forward, striking his face against the frozen ground with such force that his C5 vertebra burst from the impact and he was rendered a helpless quadriplegic. Brittany was four years of age and Jared was three years of age at the time of Mr. Pence's injury.

A look at the history of loss of consortium claims is helpful in analyzing the issue before this Court. Ancient Roman civil law provided that only a husband could bring loss of consortium claims when the loss was caused by intentional torts. This law carried into the common law of England. Over time the wife was given the right to bring consortium claims in ecclesiastical courts but not courts of law. During the 19th century the law was expanded to give the husband the right to bring consortium claims when the loss was caused by an act of negligence. With the adoption of the Married Women's Acts, the wife was finally able to bring consortium claims in courts of law for loss caused by intentional acts. It wasn't until 1950 that the law recognized the wife's right to bring consortium claims for loss caused by negligent acts.

Montana Federal District Court was the first to recognize the wife's right to sue for loss of consortium in Montana. Duffy v. Lipsman, 200 F.Supp. 71 (D.Mont. 1961); Dutton v. Hightower (D.Mont. 1963), 214 F.Supp. 298; Hall v. United States (D.Mont. 1967), 266 F.Supp. 671. In 1986, this Court also recognized the wife's right to sue for loss of consortium claims in Montana in

2

Bain v. Gleason, (1986), 223 Mont. 442, 726 P.2d 1153.

Montana currently allows loss of consortium claims by a husband or wife whose spouse has been killed or injured. Montana also allows loss of consortium claims, pursuant to Montana's Wrongful Death Statutes, by a parent whose child has been killed, and by a child whose parent has been killed. Dawson v. Hill & Hill Truck Lines (1983) 206 Mont. 325, 671 P.2d 589; Ewalt v. Scott (1983), 206 Mont. 503, 675 P.2d 77. The question is whether this Court will now recognize the child's right to recover when a parent is seriously injured rather than killed.

Prior to 1980 no state recognized such a claim. Since 1980 there has been a growing trend to recognize loss of parental consortium claims. At least ten states now recognize such claims. (Arizona, Alaska, Vermont, Washington, Wisconsin, Iowa, Michigan, Massachusetts, Oklahoma, and Texas.) However, the majority of jurisdictions do not as yet recognize the claim of a child for loss of parental consortium. (Arkansas, California, Colorado, Florida, Georgia, Illinois, Minnesota, New York, North Dakota, Ohio, Oregon, Pennsylvania, Missouri, North Carolina, Tennessee, Maryland, Louisiana, Nevada, New Jersey, Kansas, Indiana, and 3rd Cir.).

Defendants cite Prosser for the rule that the child's claim for loss of consortium has not been widely recognized. Prosser, Torts (4th ed. 1971), §§ 124, 125 at 886, 894. We note that in the same edition Dean Prosser criticized the failure of the courts to compensate children. Prosser, Torts (4th ed. 1971), § 125 at 896.

The defendants argue that because social and economic factors

3

should be considered before extending to children the right to consortium claims, the legislature is the appropriate body to create such an expansion. The courts have the responsibility to reform common law as justice requires. We agree with and adopt the following conclusions of the Supreme Courts of Iowa and Vermont.

> The contention that recognition of such a cause of action is a question for the legislature ignores the fact that the action for loss of consortium is a creation of the common law, and that the development of the common law is within the proper sphere of our authority and responsibility.

Wietl v. Moes (Iowa, 1981), 311 N.W.2d 259, 266.

> [S]uch an argument ignores our responsibility to face a difficult legal question and accept judicial responsibility for a needed change in the common law . . . when the conditions and needs of the society have changed, judges must adapt the common law to those new conditions . . . It must also be noted that our recognition of a new cause of action for the loss of parental consortium, as in the present case, in no way precludes the legislature from addressing the subject; it is still free to act. The legislature may ratify, limit or reject our holding.

Hay v. Medical Center Hosp. (Vt. 1985), 496 A.2d 939, 945-46. We reject the defendants' argument that the loss of parental consortium cause of action should be left solely to the legislature.

In refusing to recognize a child's right to sue for loss of consortium for injury to a parent, the District Court premised its conclusion upon the assumption that loss of consortium actions in Montana is exclusively statutory rather than common law. The District Court cited Bain, 223 Mont. at 445, 726 P.2d at 1155, which stated:

4

> . . . the basis for a consortium claim lies in Montana
> statutes in which husband and wife contract for the
> obligation of mutual respect, fidelity, and support.
> Section 40-2-101, MCA. We further agree with the court
> in _Dutton_, _supra_, that consortium includes a legal right
> to the aid, protection, affection and society of the
> other spouse.

See also Gunning v. General Motors Corp. (1989), 239 Mont. 104, 107, 779 P.2d 64, 66. Section 40-2-101, MCA, reads:

> Husband and wife contract toward each other obligations
> of mutual respect, fidelity, and support.

Section 40-2-101, MCA, does not "create" the cause of action. It merely defines the obligations which inhere in the marriage relationship and upon which the common law action is based. The inaccuracy of the defendants' conclusion that the legislature created the claim through § 40-2-101, MCA, is proven by the fact that the statute has been on the books since 1895, but it was not until 1986 that this Court recognized the claim. The statute merely codifies the policy behind the common law by recognizing that spouses contract with one another for mutual obligations.

In the same way that § 40-2-101, MCA, defines the marriage obligations upon which the common law action of loss of spousal consortium is based, § 40-6-211, MCA, defines the obligation of support which inheres in the parent-child relationship. Section 40-6-211, MCA, provides:

> The parent or parents entitled to custody of a child must
> give him support and education suitable to his
> circumstances.

The consortium rights of spouses, and parents in the case of loss resulting from a child's injury or death, and children in the case of a deceased parent, have arisen not only by statute but by

5

court decisions extending the common law that once gave only husbands that right. In 1929 this Court held that "in addition to support, a wife is entitled to the aid, protection, affection, and society of her husband." Wallace v. Wallace (1929), 85 Mont. 492, 516, 279 P. 374, 382. The rationale behind Wallace, Duffy, Dutton, and Hall, supra, apply equally well to parent-child relationships. Like the rights of a wife, the rights of the child to support, aid, protection, affection and society of the parent derive from both statute and case law. §§ 40-6-211, 40-6-214, 41-3-102(3)(c); In re Krug (1988), 231 Mont. 78, 751 P.2d 171. In addition, the child has the right to parental discipline, guidance and training. Colorado's Federal District Court came to the following conclusions:

> While the term "loss of consortium" has been attached to the children's claim, the broader term, "loss of society and companionship," is equally appropriate. Use of the latter term avoids the narrower construction connoting this right derives primarily from the sexual relationship incident to marriage. Indeed, loss of consortium is "a useful though ambiguous term having a rather old-fashioned ring today." H. Clark, Domestic Relations § 10.1 (1968). While companionship may include sexual relations [See, e.g. Prosser, Torts § 125 at 889 (4th ed. 1971) as cited in CJI-Civ.2d 6:7 (1980)], courts have continued to regard loss of consortium to embrace all of those values -- tangible and intangible -- inherent in the family relationship. In his treatise, Clark (supra.) asserts that the term loss of consortium is equally appropriate in reference to the parent-child relationship to summarize "the multitude of rights and duties binding parents to their children and vice versa." Clark at § 10.1 (1968).
>
> Thus, in the context of the parent-child relationship, the term consortium encompasses a complex of rights -- care, comfort, guidance, society, companionship -- which is imbued from the earliest stages of bonding infant to parent. Indeed, the family unit has been recognized by the Supreme Court to bear constitutionally protected

6

aspects. (Citations omitted).

Reighley v. International Playtex, Inc. (D.Colo. 1985), 604 F.Supp. 1078, 1081.

We also cite with approval the Alaska Supreme Court which stated:

> When a parent is seriously injured, his or her child suffers a loss of enjoyment, care, guidance, love and protection, and is also deprived of a role model. Even courts that deny the parental consortium cause of action have acknowledged the reality of such emotional and psychological injury to the child, and the Alaska legislature has implicitly done so in allowing recovery by children for loss of consortium under Alaska's wrongful death statute.
>
> Precluding minor children from maintaining a cause of action for loss of parental consortium arising from their parent's injury would, in our view, be inconsistent with the legislature's authorization of such recovery when the parent dies, and with our prior holding in Fruit that a husband or wife may recover damages for loss of consortium when an injured spouse survives. The claim for loss of parental consortium presented in this case is not sufficiently distinguishable from either spousal consortium claims in injury cases or children's consortium claims in death cases to warrant non-recognition. (Citations ommitted).

Hibpshman v. Prudhoe Bay Supply, Inc. (Alaska 1987), 734 P.2d 991, 994.

We conclude that under the Montana case law and statutes as developed, minor children are entitled to the support, aid, protection, affection, society, discipline, guidance and training of their parent. This policy underlies the "best interests of the child test" in custody determinations under § 40-4-212, MCA, and the right of the child to seek damages under Montana's Wrongful Death Statute. See §§ 27-1-512 and 513, MCA, and Ewalt, 206 Mont. 503, 675 P.2d 77. Therefore we hold that minor children who have

7

been deprived of these rights have a separate cause of action for loss of parental consortium when a parent is tortiously injured by a third party and rendered a quadraplegic.

However, we caution that any one element of damages for the injury may be recovered only once. Damages for support and education under § 40-6-211, MCA, that go to the benefit of the child may be recovered by the injured parent, a spouse or by the child. While these economic losses may be recovered by the injured parent, a spouse or the child, the damages for loss of parental aid, protection, affection, society, discipline, guidance and training are recoverable only by the child. Therefore possible duplication of damage awards must be considered by the trial court in order to prevent double recovery for any element of damages. We approve of the procedure used in the present case where the consortium claims brought in behalf of the children are combined with the consortium claims of the injured parent and the spouse. Such procedure furnishes the opportunity to prevent double recovery for economic losses such as support and education of the children.

We reverse and remand to the District Court for further proceedings on the merits.

_____
Justice

We Concur:

_____
Chief Justice

_____
John Conway Harrison

8

William E. Hunter

Troy Truwill

R. C. McDonough

Karla M. Gray

Justices