495 N.W.2d 286 (1993)
242 Neb. 415
William GUENTHER, a Minor, by Marvin GUENTHER, His Father and Next Friend, Appellant,
v.
Shelly R. STOLLBERG and Gail Stollberg, Appellees.
No. S-90-551.
Supreme Court of Nebraska.
February 12, 1993.
Steven M. Watson, P.C., of Marks & Clare, Omaha, and Thomas B. Donner, West Point, for appellant.
Donald D. Schneider, of Don Schneider Law Office, Fremont, for appellees.
HASTINGS, C.J., and BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.
PER CURIAM.
The minor child, appellant William Guenther, sued the appellees, Shelly R. and Gail Stollberg, through his father and next friend, Marvin Guenther, alleging that the Stollbergs negligently but nonfatally injured the child's mother and thereby caused him to suffer the loss of her consortium. The district court concluded the child had not stated a cause of action, sustained the Stollbergs' demurrer, and after the child elected not to amend, dismissed his petition. By asserting the dismissal was erroneous, the child invites us to recognize a cause of action for a minor child's loss of a negligently injured parent's consortium. We decline the invitation and affirm the judgment of the district court.
We have defined consortium to mean comfort, society, love, and protection. Creason v. Myers, 217 Neb. 551, 350 N.W.2d 526 (1984), citing Sowle v. Sowle, 115 Neb. 795, 215 N.W. 122 (1927), and Larsen v. Larsen, 115 Neb. 601, 213 N.W. 971 (1927). We have long held that a husband may recover for the loss of his nonfatally injured wife's consortium, Omaha & R. V. R. Co. v. Chollette, 41 Neb. 578, 59 N.W. 921 (1894), and permit a wife to recover for the loss of her nonfatally injured husband's consortium, Anson v. Fletcher, 192 Neb. 317, 220 N.W.2d 371 (1974). But while we have recognized that a parent has a cause of action for the loss of a nonfatally injured minor child's services, Macku v. Drackett Products Co., 216 Neb. 176, 343 N.W.2d 58 (1984), we have neither been cited to nor are we aware of any case in which we have permitted a parent to recover for the loss of a nonfatally injured minor child's consortium. Although its recognition has been advocated by some academicians, neither was a cause of action for the loss of a nonfatally injured parent's consortium known at common law. See, e.g., W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 125 at 935-36 (5th ed. 1984); Maureen Ann Delaney, Comment, What About the Children? Toward an Expansion of Loss of Consortium Recovery in the District of Columbia, 41 Am. U.L.Rev. 107 (1991); David P. Dwork, Note, The Child's Right to Sue for Loss of *287 a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent, 56 B.U.L.Rev. 722 (1976).
The Supreme Judicial Court of Massachusetts became the first court to succumb to these entreaties. See Ferriter v. Daniel O'Connell's Sons, Inc., 381 Mass. 507, 413 N.E.2d 690 (1980). Other states soon followed. See, e.g., Berger v. Weber, 411 Mich. 1, 303 N.W.2d 424 (1981).
As best we can determine, 13 states now recognize a common-law claim for loss of parental consortium. See, Hibpshman v. Prudhoe Bay Supply, Inc., 734 P.2d 991 (Alaska 1987); Villareal v. State, Dept. of Transp., 160 Ariz. 474, 774 P.2d 213 (1989); Higley v. Kramer, 581 So.2d 273 (La.App. 1991), writ denied 583 So.2d 483 (La.); Ferriter v. Daniel O'Connell's Sons, Inc., supra; Berger v Weber, supra; Pence v. Fox, 248 Mont. 521, 813 P.2d 429 (1991); Williams v. Hook, 804 P.2d 1131 (Okla. 1990); Reagan v. Vaughn, 804 S.W.2d 463 (Tex.1990); Hay v. Medical Center Hospital of Vermont, 145 Vt. 533, 496 A.2d 939 (1985); Ueland v. Pengo Hydra-Pull Corp., 103 Wash.2d 131, 691 P.2d 190 (1984); Belcher v. Goins, 184 W.Va. 395, 400 S.E.2d 830 (1990); Theama v. City of Kenosha, 117 Wis.2d 508, 344 N.W.2d 513 (1984); Nulle v. Gillette-Campbell Fire Bd., 797 P.2d 1171 (Wyo.1990). See, also, Weitl v. Moes, 311 N.W.2d 259 (Iowa 1981), modified on other grounds, Audubon-Exira v. Ill. Cent. Gulf R. Co., 335 N.W.2d 148 (Iowa 1983) (limiting recovery to that afforded by controlling statute which Weitl improperly construed).
The reasons given for recognizing the action include that it is just the right thing to do; that a tort-feasor as a matter of policy should be held accountable for all damages resulting from his or her wrongful acts, including injuries to familial relationships, which are significant and worthy of compensation, see, e.g., Reagan v. Vaughn, supra; that it is inherently inconsistent to permit children to recover for the wrongful death of a parent but not for nonfatal injuries to a parent which also deprive them of love, companionship, and the like, see, e.g., Berger v. Weber, supra; and that children possess rights comparable to those of the rest of society and any restriction of these rights must be justified by strong public policy, see, e.g., Ferriter v. Daniel O'Connell's Sons, Inc., supra.
Nonetheless, many jurisdictions have chosen not to recognize a cause of action for loss of parental consortium. See, De-Loach v. Companhia de Navegacao Lloyd Brasileiro, 782 F.2d 438 (3d Cir.1986) (maritime law); Jones v. Lifespring, Inc., 713 F.Supp. 426 (D.D.C.1988); Green v. A.B. Hagglund and Soner, 634 F.Supp. 790 (D.Idaho 1986) (applying Idaho law); Gray v. Suggs, 292 Ark. 19, 728 S.W.2d 148 (1987); Borer v. American Airlines, Inc., 19 Cal.3d 441, 563 P.2d 858, 138 Cal.Rptr. 302 (1977); Lee v. Colorado Dept. of Health, 718 P.2d 221 (Colo.1986); Hinde v. Butler, 35 Conn.Supp. 292, 408 A.2d 668 (1979); Zorzos v. Rosen By and Through Rosen, 467 So.2d 305 (Fla.1985); W.J. Bremer Co. v. Graham, 169 Ga.App. 115, 312 S.E.2d 806 (1983), writ denied 252 Ga. 36, 312 S.E.2d 787 (1984); Dearborn Fabricating & Engin. v. Wickham, 551 N.E.2d 1135 (Ind.1990); Schmeck v. City of Shawnee, 231 Kan. 588, 647 P.2d 1263 (1982); Durepo v. Fishman, 533 A.2d 264 (Me.1987); Gaver v. Harrant, 316 Md. 17, 557 A.2d 210 (1989); Salin v. Kloempken, 322 N.W.2d 736 (Minn.1982); Barbera v. Brod-Dugan Co., 770 S.W.2d 318 (Mo.App. 1989); Russell v. Salem Transportation Co., Inc., 61 N.J. 502, 295 A.2d 862 (1972); De Angelis v. Lutheran Medical Center, 58 N.Y.2d 1053, 449 N.E.2d 406, 462 N.Y.S.2d 626 (1983); Vaughn v. Clarkson, 324 N.C. 108, 376 S.E.2d 236 (1989); Morgel v. Winger, 290 N.W.2d 266 (N.D.1980); High v. Howard, 64 Ohio St.3d 82, 592 N.E.2d 818 (1992); Norwest v. Presbyterian Intercommunity Hosp., 293 Or. 543, 652 P.2d 318 (1982); Steiner by Steiner v. Bell Telephone Co., 358 Pa.Super. 505, 517 A.2d 1348 (1986), aff'd 518 Pa. 57, 540 A.2d 266 (1988); Still by Erlandson v. Baptist Hosp., 755 S.W.2d 807 (Tenn.App.1988).
Among the reasons advanced for not doing so are that a child has no legal entitlement to his or her parent's love, guidance, and companionship, see, e.g., High v. Howard, supra; that such an action would result *288 in exposing the tort-feasor to the possibility of having to pay double damages, see, e.g., Russell v. Salem Transportation Co., Inc., supra, and Borer v. American Airlines, Inc., supra; and that the monetary value of a parent's guidance, companionship, and affection is simply too speculative for damages to be assessed, see, e.g., Borer v. American Airlines, Inc., supra, and Russell v. Salem Transportation Co., Inc., supra.
Perhaps one of the more thoughtful analyses of the problems attendant to recognizing the cause of action is found in Hoesing v. Sears, Roebuck & Co., 484 F.Supp. 478 (D.Neb.1980). The plaintiffs therein sought to recover damages for injuries caused to their parents by the defendant. In predicting that this court would follow the majority rule and deny recovery, the Hoesing court noted that the resolution of whether to permit a cause of action for loss of parental consortium must be based on public policy considerations.
"Plaintiff's claim, viewed in the abstract and divorced from its surroundings, carries both logical and sympathetic appeal.... Certain aspects of spousal relationship are similar to those of the parent-child relationship, and there can be little question of the reality of the loss suffered by a child deprived of the society and care of its parent. Nevertheless our decision must take into account considerations in addition to logical symmetry and sympathetic appeal.... [N]ot every loss can be made compensable in money damages, and legal causation must terminate somewhere. In delineating the extent of a tortfeasor's responsibility for damages under the general rule of tort liability (Civ.Code § 1714), the courts must locate the line between liability and nonliability at some point, a decision which is essentially political."
Hoesing, 484 F.Supp. at 478-79, quoting Borer v. American Airlines, Inc., supra.
The Hoesing court also observed:
In determining whether to recognize a cause of action for loss of parental consortium, this Court must consider the intangible, non-pecuniary nature of consortium loss. The companionship and guidance of a parent cannot be regained by a monetary award. The loss that a child suffers is such that he can never be compensated for it. Allowing the plaintiff to recover damages for loss of parental consortium creates a future benefit for the child which is essentially unrelated to the loss suffered....
In addition to the non-compensatory nature of any damages award, the Court must also consider the social burden of providing damages for loss of parental consortium. The burden of paying awards for loss of consortium will be borne by the public generally in increased insurance premiums.... An additional social cost is the expenditure of valuable judicial resources in litigating these claims. This cost would be substantial, since a claim of loss of consortium would be raised in any case involving a serious injury to a parent.... When the social costs are weighed against the non-compensatory nature of the monetary award, it appears that the social costs outweigh the purported benefits....
. . . .
Another reason for refusing to extend liability for loss of consortium is the difficulty in placing a pecuniary value on the plaintiffs' loss. There is no standard by which a trier of fact can determine whether a particular dollar amount is an adequate award in any given setting. This difficulty in ascertaining the amount of damages leads in turn to the risk of double recovery: "to ask the jury, even under carefully drafted instructions, to distinguish the loss to the mother from her inability to care for her children from the loss to the children from the mother's inability to care for them may be asking too much."
484 F.Supp. at 479-80, quoting Borer v. American Airlines, Inc., supra.
Distinguishing recovery for marital consortium under Nebraska law, the Hoesing court noted that "[u]nlike recovery for loss of marital consortium, recovery for parental consortium involves serious problems of *289 multiplication of claims and of inflation of damage awards." 484 F.Supp. at 480.
Finally, the Hoesing court pointed out that
allowing recovery for nonfatal injuries would entail problems of multiplication of actions not present in the wrongful death context. If recovery were permitted for nonfatal injuries, a child would have a claim in every situation in which a parent is injured. The number of suits engendered by such a ruling would be far greater than the number of wrongful death actions involving loss of parental consortium. This multiplication of litigation counsels against expanding liability for loss of parental consortium, even though a child may presently recover for loss of consortium in a wrongful death action.
484 F.Supp. at 481.
One of the more noteworthy developments is that in Sizemore v. Smock, 430 Mich. 283, 422 N.W.2d 666 (1988), the Michigan Supreme Court refused to recognize the right of a parent to recover for the loss of a negligently injured child's consortium for many of the reasons the dissenters in Berger v. Weber, 411 Mich. 1, 303 N.W.2d 424 (1981), urged for not recognizing a cause of action in a child for the loss of a negligently injured parent's consortium. Whatever this development may suggest, for the reasons articulated by the federal district court in Hoesing v. Sears, Roebuck & Co., supra, we elect not to modify the common law by recognizing a cause of action for a minor child's loss of a negligently injured parent's consortium.
Thus, the judgment of the district court is affirmed.
AFFIRMED.
WHITE, Justice, dissenting.
The majority declares that a compelling reason to refuse to entertain an action by a minor for the loss of the care, comfort, and companionship of a parent is that there may very well be an increase in litigation, and cites as authority a U.S. District Court case, Hoesing v. Sears, Roebuck & Co., 484 F.Supp. 478 (D.Neb.1980).
The concern of a non-common-law court for the difficulties of a court administering the common law is neither persuasive nor controlling; rather, I submit, we should be guided by the solemn duty enjoined on us by article I, § 13, of the Nebraska Constitution's Bill of Rights, which provides that "[a]ll courts shall be open, and every person, for any injury done him in his ... person ... shall have a remedy by due course of law, and justice administered without denial or delay."
SHANAHAN, Justice, dissenting.
Although there is a sound foundation in law and logic for a minor child's common-law action based on loss of parental consortium when the child's parent is injured and survives in a disabled condition, this court's majority today adopts Hoesing v. Sears, Roebuck & Co., 484 F.Supp. 478 (D.Neb. 1980), as an expression of Nebraska policy and concludes that the cause of action does not exist in Nebraska because (1) a child has no legal entitlement to parental love, guidance, and companionship; (2) such a cause of action might result in double recoveries through damages awarded in both the parent's personal injury action and the child's lawsuit; and (3) the monetary value of parental guidance, companionship, and affection is too speculative and, therefore, cannot supply the basis for a sustainable damages award.
However, I disagree with the majority because, as an additional step in existing Nebraska law, a child should be able to recover for the loss of parental consortium when the child's parent survives a disabling injury tortiously caused by another. Moreover, the majority's attempted distinction between the parental cause of action for the loss of a child's consortium and a child's cause of action for loss of parental consortium lacks a valid basis.
Although a parental cause of action at common law was originally based on loss of a child's services when the child was injured, today a child is generally viewed not simply as a source of parental pecuniary benefit but, rather, as a source of *290 comfort, companionship, love, and society. Indeed, in Selders v. Armentrout, 190 Neb. 275, 207 N.W.2d 686 (1973), we recognized that if recoverable damages for a child's wrongful death were restricted to the monetary value of the child's services, an average child's life would probably have negative worth under an absolutely pecuniary standard; hence, parents can recover for the tortious loss of society and companionship with their children. See, also, Williams v. Monarch Transp., 238 Neb. 354, 359, 470 N.W.2d 751, 755 (1991): "`The term "society" embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection.'" (Quoting Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974).) As we also observed in Williams v. Monarch Transp.: "`[A]n individual member of a family has a value to others as part of a functioning social and economic unit. This value is the value of mutual society and protection, in a word, companionship. The human companionship thus afforded has a definite, substantial, and ascertainable pecuniary value....'" 238 Neb. at 360, 470 N.W.2d at 755 (quoting Wycko v. Gnodtke, 361 Mich. 331, 105 N.W.2d 118 (1960)).
As noted by the majority, in Macku v. Drackett Products Co., 216 Neb. 176, 179, 343 N.W.2d 58, 60 (1984), we acknowledged that under Nebraska's common law, parents have a cause of action for a tortiously caused "loss or damage sustained on account of" their child's bodily injury which is not fatal to the child.
Concerning a child's action for loss of parental consortium, the Supreme Court of Washington made the following observation in Ueland v. Pengo Hydra-Pull Corp., 103 Wash.2d 131, 134, 691 P.2d 190, 192 (1984):
The state of the law in this area is anomalous in that a child may recover for loss of consortium if the parent dies as a result of another's negligence, but not if the severely injured parent remains alive but in a vegetative state. Surely the child's loss of the parent's love, care, companionship and guidance is nearly the same in both situations. Also, permitting a husband or wife but not children to recover for loss of consortium erroneously suggests that an adult is more likely to suffer emotional injury than a child.
A child's cause of action for loss of parental consortium provides a real remedy for the prospective loss of a genuine benefit to a child. In In re Interest of A.G.G., 230 Neb. 707, 717, 433 N.W.2d 185, 192 (1988), this court emphasized the parental duty to provide "care, protection, affection, love, guidance, and the opportunity to display filial affection." True, In re Interest of A.G.G. was a proceeding under the Nebraska Juvenile Code to terminate parental rights. Nonetheless, In re Interest of A.G.G. is judicial recognition of the parental duty to provide a child with the various elements of consortium and is acknowledgment that failure to perform the duty is a basis to terminate parental rights. From this, we may infer that when a person is obligated to act in a specific way toward another, that is, one has a duty to act in a specified manner, the beneficiary of the duty has a right to expect the conduct ordered by the duty and is entitled to performance of that duty. Since this court has acknowledged that a parent has the legal duty to provide a child with familial association, including care, companionship, guidance, and society, see In re Interest of A.G.G., supra, it is impossible to deny that a child has the corresponding right to expect and, therefore, is entitled to those benefits that a parent is legally obligated to provide. Hence, a child is entitled to those benefits which compose parental consortium. Tortious interference with a child's expectation or receipt of those benefits is actionable misconduct for which there should be a remedy under any system of civil law. Therefore, William Guenther should be allowed his day in court to present his case for loss of parental consortium as a consequence of his mother's disability caused by the subject automobile accident.
*291 The majority also contends that allowing a child's cause of action might increase the number of lawsuits and result in double recovery, that is, damages awarded in the parent's personal injury action and damages recovered on the child's consortium claim.
First, regarding the bogeyman or, to be politically correct, the bogeyperson of additional lawsuits injected into the civil system, a court should examine the merits of a cause of action and determine whether a cause of action is jurisprudentially justifiable and requires redress lest tortious interference with a right pass without a remedy. Moreover, suitable rules for joinder of actions would prevent multiple suits arising from the same tortious conduct. For instance, appropriate and judicially fashioned rules can provide for joinder of the child's consortium claim with a parent's personal injury action, either by compulsory joinder or a joinder at a defendant's option. See, Villareal v. State, Dept. of Transp., 160 Ariz. 474, 774 P.2d 213 (1989); Ueland v. Pengo Hydra-Pull Corp., supra; Theama v. City of Kenosha, 117 Wis.2d 508, 344 N.W.2d 513 (1984).
Second, the specter of double recoveries, as one of the "things that go bump in the night," vanishes in the light of adequate jury instructions to provide the correct standard for awarding damages.
The majority's contention that the value of parental guidance, companionship, and affection is too speculative for assessment damages is specious and without merit under existing Nebraska law. As recognized in Maloney v. Kaminski, 220 Neb. 55, 69-70, 368 N.W.2d 447, 458 (1985):
The law does not provide any positive, definite mathematical formula or legal rule by which a jury shall fix the amount of pecuniary loss; it must be determined upon a consideration of the circumstances of each case. [Citations omitted.] There is no requirement that there be evidence of the dollar value of companionship, counseling, or advice. It is a matter left to the sound discretion of the jury.
Thus, if a fact finder, especially a jury, is competent to assess damages for the loss of society, comfort, and companionship suffered by a parent or spouse, there is no legal reason that ascertaining similar damages to a child is impossible when the child's parent is injured.
Although Hoesing v. Sears, Roebuck & Co., 484 F.Supp. 478 (D.Neb.1980), is correct that a child can never be monetarily compensated for the loss of parental companionship and guidance, a monetary award "is the only workable way that our legal system has found to ease the injured party's tragic loss. We recognize this as a shortcoming of our society, yet we believe that allowing such an award is clearly preferable to completely denying recovery." Theama v. City of Kenosha, 117 Wis.2d at 523, 344 N.W.2d at 520. "Although a monetary award will not enable a child to regain the loss of a parent's love, companionship, and guidance, we believe such an award may enable the child to lessen the impact of the loss." Ueland v. Pengo Hydra-Pull Corp., 103 Wash.2d 131, 139, 691 P.2d 190, 194 (1984). Money certainly cannot replace a parent's love, companionship, and guidance, but a monetary award enables a child to obtain some substitute for familial association lost through parental injury and disability which prevents the normal beneficial relationship between parent and child.
Finally, the majority refers to Sizemore v. Smock, 430 Mich. 283, 422 N.W.2d 666 (1988), but in Sizemore the Supreme Court of Michigan pointed out that Berger v. Weber, 411 Mich. 1, 303 N.W.2d 424 (1981), was not overruled and remains an integral part of Michigan common law governing actions for loss of consortium. "Whatever [this court's majority] may suggest" or imply, the Supreme Court of Michigan continues to recognize a child's cause of action for the loss of consortium as the result of disability from a negligently inflicted injury to the child's parent.
Even the majority of this court does not quarrel with or dispute a child's right to *292 recover for the loss of parental consortium as the result of wrongful death. However, a casket cannot be the solitary standard for compensating a child's loss of parental consortium. Consequently, this court should have recognized a child's cause of action for loss of parental consortium as the result of a negligent defendant's injuring and disabling the child's parent.