No. 92-121

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

---

LOIS Y. KEELE and FRANK S. KEELE,
individually, and as next friends of
their minor child, LISA KEELE,

     Plaintiffs and Appellants,

  -vs-

ST. VINCENT HOSPITAL AND HEALTH CARE CENTER,
and DR. JAMES R. HARRIS, M.D.,

     Defendants and Respondents.

---

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                The Honorable Russell K. Fillner, Judge presiding.


COUNSEL OF RECORD:

       For Appellants:
          William P. Fitzgerald (argued for appellant);
          Lynaugh, Fitzgerald, Eiselein & Eakin, Billings,
          Montana

       For Respondents:
          Richard F. Cebull (argued for respondent Dr.
          Harris) John J. Russell; Brown, Gerbase, Cebull,
          Fulton, Harman & Ross, Billings, Montana
          Robert C. Brown (argued for respondent St. Vincent
          Hospital); Poore, Roth & Robinson, Butte, Montana

       For Amicus:
          W. William Leaphart (argued on behalf of Trial
          Lawyers Association); Leaphart Law Firm, Helena,
          Montana
          Randy J. Cox (filed brief on behalf of Montana
          Defense Trial Lawyers); Boone, Karlberg & Haddon,
          Missoula, Montana

Submitted: February 4, 1993

Decided: May 6, 1993

Filed:

MAY 6 - 1993

... Smith
... OF SUPREME COURT.
STATE OF MONTANA

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Appellant Lisa Keele appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, dismissing her claim for loss of parental consortium. We reverse and remand.

The sole issue on appeal is whether a minor child's cause of action for loss of parental consortium requires the parent to have suffered an injury rendering him or her a quadriplegic.

Because this appeal is before us following the grant of a motion to dismiss under Rule 12(b)(6), M.R.Civ.P., the well-pleaded allegations in the complaint are considered true. Mogan v. City of Harlem (1987), 227 Mont. 435, 437, 739 P.2d 491, 493. Therefore, we distill the facts relevant to our discussion from the complaint.

Lois Keele (Lois), accompanied by her husband, Frank Keele (Frank), was admitted to St. Vincent Hospital and Health Center (St. Vincent's) on December 15, 1985. She was 38 weeks pregnant and in active labor. The obstetrical ward nurses examined Lois and immediately determined that the fetus was in the "transverse lie position." This condition results in a high likelihood of a cesarean section delivery. Dr. James Harris, an obstetrician at St. Vincent's, began treating Lois according to established procedure.

Anesthesiologists were available on an "on-call" basis only at St. Vincent's. Hospital procedure required the staff to allow the anesthesiologists thirty minutes to arrive at the operating room after the initial call. Dr. Harris did not call an

2

anesthesiologist when he became aware of the fetal position.

Lois' water broke, and an immediate Code I cesarean section was required to preserve the health of the fetus. Fetal distress required immediate action, notwithstanding the fact that an anesthesiologist had not been called to prepare Lois for surgery. Dr. Harris administered a local anesthesia before surgical cutting began, but the abdominal surgery proceeded without a spinal block or general anesthesia.

In November of 1988, Lois and Frank Keele filed a medical malpractice action against St. Vincent's; in April, 1989, they filed a separate action against Dr. James Harris. On September 27, 1991, Lois and Frank amended their complaint, consolidating the cases against Dr. Harris and St. Vincent's and adding their minor daughter Lisa Keele, the child born during the traumatic delivery, as a plaintiff. The amended complaint alleged injury to all three plaintiffs due to the negligence of the defendants in failing to obtain timely anesthesia services before performing the cesarean section on Lois Keele. Lisa Keele claimed loss of parental consortium.

In October, 1991, Dr. Harris and St. Vincent's moved to dismiss Lisa's claim for loss of parental consortium pursuant to Rule 12(b)(6), M.R.Civ.P. After briefing and oral argument, the District Court ordered entry of judgment against Lisa Keele. Lisa Keele appeals.

Does a minor child's cause of action for loss of parental

3

consortium require the parent to have suffered an injury rendering him or her a quadriplegic?

Appellant Lisa Keele (Lisa) bases her argument that she has a claim for loss of parental consortium on Pence v. Fox (1991), 248 Mont. 521, 813 P.2d 429. In Pence, a case of first impression, we recognized a child's cause of action for loss of parental consortium against a tortfeasor who had rendered the father a quadriplegic. Pence, 813 P.2d at 433. In that case we held:

> [M]inor children who have been deprived of these rights have a separate cause of action for loss of parental consortium when a parent is tortiously injured by a third party and rendered a quadriplegic.

Pence, 813 P.2d at 433.

Respondents Dr. Harris and St. Vincent's contend that the Pence decision must be strictly interpreted, and that this Court intended to set a reasonable, enforceable boundary for loss of consortium claims. They urge this Court to limit loss of parental consortium claims to cases in which the parent suffers a severe, permanent and disabling physical injury, similar to quadriplegia.

Lisa argues that in Pence, this Court established a policy to protect, support and foster the parent-child relationship in Montana. She contends that this broad policy of enforcing the familial unit espoused in Pence covers the cause of action in this case, even though the specific holding in Pence was limited to cases involving quadriplegia. Lisa asserts that the respondents improperly focus on the nature of the injury to the parent; instead, the court should focus on the damage to the parent-child relationship caused by the tortfeasor.

4

The District Court correctly recognized the limited nature of our holding in Pence, and based its decision to dismiss Lisa's claim on the specific language therein. However, we have recognized repeatedly our authority and responsibility for the continued development of the common law. See Pence, 813 P.2d at 431. We see no rational basis for limiting the cause of action for loss of parental consortium to children whose parents are rendered quadriplegic; such a result arbitrarily would exclude children whose parents suffered, for example, a severe brain injury resulting in a lifelong coma which totally eliminated parental consortium. Therefore, further development of the cause of action for loss of parental consortium in Montana is appropriate.

We noted in Pence the growing trend to recognize loss of parental consortium actions. At the time of that decision, at least ten states had recognized the claim: Arizona, Alaska, Vermont, Washington, Wisconsin, Iowa, Michigan, Massachusetts, Oklahoma and Texas. Pence, 813 P.2d at 431. Additional jurisdictions now recognizing the cause of action include West Virginia and Wyoming. See Belcher v. Goins (W.Va. 1990), 400 S.E.2d 830 and Nulle v. Gillette-Campbell County Joint Powers Fire Board (Wyo. 1990), 797 P.2d 1171.

We have surveyed the approaches employed in these jurisdictions and discovered a wide range of standards. For example, in Michigan, a child can recover for loss of the parent's society and companionship when the parent is tortiously injured. Berger v. Weber (Mich. 1981), 303 N.W.2d 424, 427. In Berger, the

Michigan Supreme Court expressly refused to limit the cause of action to instances of "severely" injured parents of a minor child. Berger, 303 N.W.2d at 427. At the other end of the spectrum, the Vermont Supreme Court has limited the cause of action to cases in which the parent has been rendered permanently comatose. Hay v. Medical Center Hosp. of Vermont (Vt. 1985), 496 A.2d 939, 946.

We also have revisited the important public policies relating to, and competing interests inherent in, this cause of action, as expressed by our sister jurisdictions and our opinion in Pence. In crafting the standard to be applied to loss of parental consortium claims in Montana, we borrow heavily from the Arizona Supreme Court's rationale in Villareal v. State Dept. of Transp. (Ariz. 1989), 774 P.2d 213. We note that the facts of Villareal do not necessarily reflect the facts before us nor the facts required for a cause of action for loss of parental consortium. Instead, we rely on the legal analysis of the Arizona Supreme Court to guide our definition of the cause of action in Montana.

In Montana, the elements necessary for a minor child to establish a claim for loss of parental consortium are:

> 1) a third party tortiously causes the parent to suffer a serious, permanent and disabling mental or physical injury compensable under Montana law; and

> 2) the parent's ultimate condition of mental or physical impairment must be so overwhelming and severe that it causes the parent-child relationship to be destroyed or nearly destroyed.

See Villareal, 774 P.2d at 219.

The first element describes the extent of injury to the parent which must be present to form the basis for a loss of parental

6

consortium claim, as well as the source of that injury. Thereafter, the element contains a limitation: the described injury to the parent must be "compensable under Montana law." The limitation reflects the derivative nature of the minor child's claim for loss of parental consortium. That claim is wholly derivative of the parent's claim against the tortfeasor for personal injuries; if the tortfeasor is not subject to liability to the parent under tort principles, the child cannot sustain a cause of action against the tortfeasor for loss of parental consortium. Villareal, 774 P.2d at 220.

For example, recovery for severe mental injury absent physical manifestations is limited to a few specific instances in Montana. See discussion in Day v. Montana Power Co. (1990), 242 Mont. 195, 199, 789 P.2d 1224, 1226-7; Versland v. Caron Transport (1983), 206 Mont. 313, 671 P.2d 583; and Johnson v. Supersave Markets, Inc. (1984), 211 Mont. 465, 686 P.2d 209. Consequently, if the parent could not recover from the tortfeasor for his or her purely mental or emotional injury absent a physical component, the child cannot bring an action for loss of parental consortium resulting from that injury to the parent.

We find support for this conclusion in Priest v. Taylor (1987), 227 Mont 370, 740 P.2d 648. In Priest, we discussed the derivative nature of a spouse's claim for loss of consortium. We stated that although the cause of action is separate and distinct, the loss of spousal consortium claim is completely derivative of the injured spouse's claim. Priest, 740 P.2d at 653. In Pence, we

7

relied heavily on our recognition of spousal consortium to support our decision to recognize the cause of action for a child's loss of parental consortium. Pence, 813 P.2d at 431-2. As such, we conclude that this limitation on a minor child's claim for loss of parental consortium is both necessary and grounded in Montana case law.

With regard to the second element of the claim for loss of parental consortium, we emphasize that the destruction or near destruction of the parent-child relationship as a result of the parent's impairment is a necessary element in establishing the cause of action itself, not merely a factor in computing damages. See Belcher, 400 S.E.2d at 841, and Villareal, 774 P.2d at 219-20.

Returning to the case before us, we express no opinion as to whether Lisa can appropriately allege and sustain a claim for loss of parental consortium under the standard set forth in this opinion. We conclude, however, that the District Court erred in dismissing her complaint for failure to state a claim upon which relief can be granted.

Reversed and remanded for further proceedings consistent with this opinion.

Karla M. Gray
Justice

We concur:

J. A. Turnage
Chief Justice

8

_____

_____

_____

_____
                Justices

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority opinion, but disagree with the standard established by the majority for determining whether a child has a cause of action for loss of his or her parent's consortium.

The nature of the loss for which a consortium action is brought is damage to the relationship between the parent and the child. When we recognized the right of a child to make a claim for loss of a parent's consortium, we pointed out that:

> [T]he rights of the child to support, aid, protection, affection and society of the parent derive from both statute and case law. §§ 40-6-211, 40-6-214, 41-3-102(3)(c)[, MCA]; *In re Krug* (1988), 231 Mont. 78, 751 P.2d 171. In addition, the child has the right to parental discipline, guidance and training. . . .
>
> . . . .
>
> We conclude that under the Montana case law and statutes as developed, minor children are entitled to the support, aid, protection, affection, society, discipline, guidance and training of their parent. This policy underlies the "best interests of the child test" in custody determinations under § 40-4-212, MCA, and the right of the child to seek damages under Montana's Wrongful Death Statute. See §§ 27-1-512 and 513, MCA, and *Ewalt [v. Scott* (1983)], 206 Mont. 503, 675 P.2d 77.

*Pence v. Fox* (1991), 248 Mont. 521, 526-27, 813 P.2d 429, 432-33.

If the nature of the loss for which a child is to be compensated is damage to the relationship between the child and his or her parent, it makes no sense to me that the cause of action is arbitrarily limited by the nature of the parent's injury. The standard which gives rise to the cause of action should logically

10

be based on the nature and extent of the damage to the parent-child relationship.

It is interesting that in Montana there is no similar limitation on the right of one spouse to recover lost consortium when it results from physical or mental injury to another spouse. *See Duffy v. Lipsman-Fulkerson & Co.* (D. Mont. 1961), 200 F. Supp. 71; *Dutton v. Hightower and Lubrecht Construction Co.* (D. Mont. 1963), 214 F. Supp. 298; *Hall v. United States* (D. Mont. 1967), 266 F. Supp. 671; *Bain v. Gleason* (1986), 223 Mont. 442, 726 P.2d 1153. And yet, there should be no dispute that disruption of the parent-child relationship will in most cases have much greater consequences than damage to the relationship between two adults. I agree with the following observation from *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent*, 56 B.U.L. Rev. 722, 742 (1976), and quoted by the Iowa Supreme Court in *Weitl v. Moes* (Iowa 1981), 311 N.W.2d 259, 269:

> Since the child in his formative years requires emotional nurture to develop properly, the loss of love, care and companionship is likely to have a more severe effect on him than on an adult; and society has a strong interest in seeing that the child's emotional development proceeds along healthy lines. Moreover, an adult is in a better position than a child to adjust to the loss of a family member's love, care and companionship through his own resources. He is capable of developing new relationships in the hope of replacing some of the emotional warmth of which he has been deprived. A child, however, is relatively powerless to initiate new relationships that might mitigate the effect of his deprivation. Legal redress may be the child's only means of mitigating the effect of his loss.

11

Because the cause of action recognized by the majority is for the purpose of compensating a child for damage to the child's relationship with his or her parent, and because there is no comparable limitation on a cause of action brought by an adult for loss of a spouse's consortium, I would not arbitrarily limit a child's claim for loss of parental consortium based on the nature of the parent's physical or mental injury. I would follow the test established by the Iowa Supreme Court when it held that in that state "a minor has an independent cause of action for loss of the society and companionship of a parent who is tortiously injured by a third party so as to cause a significant disruption or diminution of the parent-child relationship." *Weitl*, 311 N.W.2d at 270.

Therefore, I concur in the result of the majority opinion, but for reasons other than those set forth in that opinion.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing special concurrence.

_____
Justice

May 7, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

William P. Fitzgerald
LYNBAUGH, FITZGERALD, EISELEIN & EAKIN
P.O. Box 1729
Billings, MT 59103

John J. Russell & Richard F. Cebull
ANDERSON, BROWN LAW FIRM
P.O. Box 849
Billings, MT 59103

Robert C. Brown
POORE, ROTH & ROBINSON
1341 Harrison Avenue
Butte, MT 59701

W. William Leaphart
Leaphart Law Firm
One North Last Chance Gulch
Helena, MT 59601

Randy J. Cox
Boone, Karlberg & Hadden
P.O. Box 9199
Missoula, MT 59807-9199

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
  Deputy