OP 14-0016

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 299

NORTH PACIFIC INSURANCE
COMPANY,

   Plaintiff and Defender,

  v.

CALVIN STUCKY, RENEE STUCKY,
SADEE STUCKY, and CALLIE JO STUCKY,

   Defendants and Plaintiffs.

| | |
|---|---|
| ORIGINAL PROCEEDING: | Certified Question, United States District Court<br>District of Montana, Helena Division<br>Honorable Dana L. Christensen, Chief District Judge |

COUNSEL OF RECORD:

   For Plaintiff:

     Jesse Beaudette, John E. Bohyer, Bohyer, Erickson, Beaudette & Tranel,
     P.C.; Missoula, Montana

   For Defendants:

     Lori A. Harshbarger, JD Law Firm, P.C.; Whitehall, Montana

   For Amicus Montana Trial Lawyers Association:

     Jonathan McDonald, Hunt & McDonald Law Firm; Helena, Montana

     Anders Blewett, Hoyt & Blewett, PLLC; Great Falls, Montana

       Submitted on Briefs: July 23, 2014
           Decided: November 13, 2014

Filed:

   _____
         Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     The United States District Court for the District of Montana, Missoula Division, the Honorable Dana L. Christensen presiding, has certified the following questions to this Court:

> 1.  *Does Montana law recognize a claim for loss of consortium by the adult child of an injured parent?*
>
> 2.  *If Montana recognizes a claim for loss of consortium by the adult child of an injured parent, what evidentiary standard must the plaintiff meet in order to assert such a claim?*

¶2     We accepted the certified questions and now answer that Montana law recognizes a claim for loss of consortium by the adult child of an injured parent, and that to assert such a claim, the plaintiff must show that (1) a third party tortiously caused the parent to suffer a serious, permanent and disabling mental or physical injury compensable under Montana law, and (2) the parent's ultimate condition of mental or physical impairment is so overwhelming and severe that it has caused the parent-child relationship to be destroyed or nearly destroyed.  Relevant to establishing the plaintiff's cause of action, and to a jury's determination of damages, will be evidence of the severity of injury to the parent; the actual effect that the parent's injury has had on the relationship and is likely to have in the future; the child's age; the nature of the child's relationship with the parent; and the child's emotional, physical and geographic characteristics.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 The parties have stipulated to the following pertinent facts, set forth in the U.S. District Court's certification order.

¶4 On August 12, 2009, Calvin Stucky (Calvin) was injured in a motor vehicle accident in Powell County on Highway 141, when a vehicle headed in the opposite direction crossed the center line and collided head-on with his Ford truck. As a result of this collision, he sustained significant injuries with extensive physical and emotional effects. At the time of the collision, his daughters, Sadee and Callie Jo, were eighteen and fifteen, respectively.

¶5 North Pacific Insurance Company (NPIC) issued a Commercial Auto Policy (the Policy) to Earl Stucky and Glenna Stucky. The policy period at issue was from October 24, 2008, to October 24, 2009. The Policy names Calvin and his wife, Renee Stucky (Renee), as insureds under the Policy. Calvin purchased a 1980 Ford truck on or about May 27, 2009. NPIC alleges that the 1980 Ford truck was never added to the Policy for insurance coverage. Calvin alleges that he did request the 1980 Ford truck to be added to the Policy.

¶6 The Policy provides Under Insured Motorist (UIM) coverage in pertinent part as follows:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance, or use of the "underinsured motor vehicle."

3

The Policy provides that an "insured" includes any "family members" of an individual who is a named insured. A "family member" is defined as "a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child." Renee, Sadee and Callie Jo allege they are insureds under the Policy and are entitled to UIM benefits as a result of Calvin's accident.

¶7 Calvin was the only person occupying the 1980 Ford truck when the accident took place. His injuries from the accident are extensive and include: Traumatic brain injury (TBI)/closed head injury with executive level deficits and emotional dyscontrol; left acetabular fracture, sacroiliac joint disruption, S/P ORIF (open reduction internal fixation); left hip sciatic nerve entrapment secondary to left acetabular fracture and sacroiliac joint disruption; T10 vertebral fracture, S/P T8-T12 fixation; left hip extensive heterotopic ossification requiring surgical excision; mood disorder; loss of cognitive function; left lower extremity impairments; personality changes secondary to TBI; memory loss secondary to TBI; word finding difficulty secondary to TBI; headaches secondary to TBI; insomnia secondary to TBI; balance dysfunction secondary to orthopedic dysfunction; anger issues secondary to TBI; depression secondary to TBI; Bipolar I disorder secondary to TBI; chronic pain/hip arthralgias supported by chronic left hip pain secondary to HO; facial and orbital fractures; left hypertropia and esotropia due to motor vehicle accident; S/P eye surgery (right inferior rectus recession, right medial rectus recession); right shoulder posterior labral tear; likely chronic right shoulder

4

pain and possible functional limitations. He underwent multiple surgeries as a result of the accident.

¶8 Although Calvin has made improvements, he still suffers from difficulty with word finding; memory loss; balance dysfunction; visual problems; mood fluctuations; angry outbursts; physical weakness; limited ability to move; depression; agitation from over-stimulation; physical violence toward family members; dislike for people; asocial behavior; hip, back and leg pain; balance difficulties; right foot pain; cognitive limitations; visual limitations; and neuropsychological issues. He requires 24/7 supervision because of memory, executive functioning and physical limitations. He has reached his maximum medical recovery and will continue to require 24/7 supervision and physical assistance. He will require a legal guardian. He cannot drive a motor vehicle. He will require neuropsychological follow up and behavioral intervention. He will require psychiatric intervention and monitoring. The deficits created by his injuries are permanent and are expected to worsen with the effects of aging. This will increase the level of care he will require over time, and will call for additional services. It is estimated that his life care will cost approximately $4,600,000.

¶9 Calvin filed a claim with the other driver's liability insurer and also filed a claim with NPIC. NPIC filed a complaint to obtain a declaration that there is no UIM coverage for the accident because the 1980 Ford truck was never added to the Policy. The Defendants filed their counterclaim to obtain a declaration that there is UIM coverage for the accident. They requested damages arising from breach of contract, alleging that

NPIC breached its contract with them by failing to provide coverage and that NPIC should be held liable for refusing to provide coverage.

¶10 Sadee was eighteen years old at the time of Calvin's accident. While growing up, Sadee spent time every day with Calvin and Renee. Calvin coached Sadee's basketball team. He helped her learn how to rope, ride horses, play basketball and sing. He was the teacher of her life, her guidance counselor. She resided with her parents at the Stucky Ranch in Avon, Montana, for her entire life until she went to college in Bozeman, Montana, in August 2009, the week after Calvin's accident. Had the accident not occurred, Calvin and Renee would have moved Sadee to Bozeman. Because of the accident, however, Calvin was in a coma in Seattle and Renee was with him, so neither was there to help Sadee move into the college dormitory. While living in the college dormitory, every day Sadee had to face the fact that all of the other girls had their fathers and she did not.

¶11 During the summer of 2009, Sadee worked part time at the Avon Cafe. From August 2009 until May 2010, Sadee lived in Bozeman on the Montana State University (MSU) campus and attended college. During the summer of 2010, Sadee moved back home to live with Calvin and Renee. She worked on the ranch and again part time at the Avon Cafe. During that time, she was available to spend time with Calvin and to help Renee care for him. In August 2010, Sadee returned to Bozeman to attend school and lived on campus until May 2011. From May 2011 to August 2012, Sadee continued to attend college at MSU and lived in Bozeman, off campus, with two roommates. She

worked at Famous Dave's during this time. From August 2012 to December 2012, Sadee continued to attend college at MSU, lived in Bozeman, and worked part time at Famous Dave's. Engulfed by the pain Calvin's accident had caused her, Sadee was not able to keep up with college and dropped out in December 2012, with only one semester left. She emotionally and mentally could not return to college after December. Sadee has been working full time since January 2013.

¶12 Sadee was raised to be strong and independent but, since the accident, has been struggling. Until recently, she has not sought any counseling as a result of her father's injuries because she could not open up and talk about it. She thought that as long as she did not seek counseling or discuss it, the pain would go away. Additionally, she financially could not afford counseling and her health insurance would not cover the cost. However, Sadee began seeing Dr. Kenneth Olson, a psychiatrist in Bozeman, on October 25, 2013, and has continued to see him since. She has been diagnosed with Post-Traumatic Stress Disorder (PTSD), sleep dysfunction and cyclothymic disorder.

¶13 The entire family dynamics have changed since Calvin was injured. In addition to losing her father, Sadee has, in effect, lost her mother because Renee is too busy taking care of Calvin to provide love, affection, time, guidance and support. The accident and Calvin's injuries have affected Sadee's relationship with Renee and Callie Jo. Sadee finds it painful to go home to the ranch because everything is different.

¶14 Calvin was taken from Sadee before she had a chance to develop an adult relationship with him. There are many things she would like to be able to ask Calvin, but

she cannot. Prior to Calvin's accident, Sadee was very active and looked forward to doing and learning new things. Since the accident, she cannot develop the motivation to do things, she does not sleep well, and she has gained sixty-five pounds. The accident is in the back of Sadee's mind at all times. She cannot get it out of her head. She is frequently sad and experiences feelings of grief that Calvin will never be what or who he was. For the first two years after the accident, Sadee assumed Calvin would recover and return to his normal functioning. Now she has realized that he is never going to get better. He will not return to his old self and she cannot see ever living a normal life with him again.

¶15    Sadee expected that she would have the love and affection of her father for all of her life. She expected that he would be there for her when she needed guidance, love and support; that he would have helped her financially with college; that when she went home for the summers during college they could work together on the ranch; and that they would be able to laugh, talk and share with one another. Had the accident not occurred on August 12, 2009, these expectations could have been realized, but now, they never will be.

¶16    Sadee claims damages for loss of parental services, society, or consortium; loss of support; grief and sorrow; and mental and emotional distress; and seeks attorney fees. Her asserted legal basis for recovery is: "Pursuant to the insurance contract with Plaintiff (policy language), Sadee and Callie Jo are insured parties also, under the policy.

Therefore, as insured family members, they are also entitled to damages for the injuries caused by the third party tortfeasor, when the tortfeasor is underinsured."

¶17    NPIC moved for summary judgment with respect to Sadee's loss of consortium claim, asserting that Montana law does not recognize a claim for loss of consortium by the adult child of an injured parent. NPIC further contended that, even if Montana law did recognize a claim for loss of consortium by the adult child of an injured parent, it would require the plaintiff to establish "significant evidence of an extraordinarily close and interdependent relationship" as in the context of a claim for loss of consortium by the parent of an adult child. The federal court, which had diversity jurisdiction, concluded that resolving NPIC's motion involved important questions of public policy and thus, certified the matter to this Court pursuant to Rule 15 of the Montana Rules of Appellate Procedure.

## STANDARD OF REVIEW

¶18    When answering a certified question from another qualifying court as permitted by M. R. App. P. 15(3), our review is "purely an interpretation of the law as applied to the agreed facts underlying the action." *Van Orden v. United Servs. Auto. Ass'n*, 2014 MT 45, ¶ 10, 374 Mont. 62, 318 P.3d 1042 (quotations and citations omitted).

## DISCUSSION

¶19    *1. Does Montana law recognize a claim for loss of consortium by the adult child of an injured parent?*

¶20 The defendants assert, and NPIC seems to imply, that Montana law should recognize a claim for loss of consortium by an adult child based on injury to the parent. The parties differ as to how such a claim should be defined. NPIC argues that a loss of consortium claim brought by the adult child of an injured parent should be recognized only in narrow circumstances and should be subject to a very high level of proof. The defendants, and amicus Montana Trial Lawyers' Association (MTLA), argue that such a claim should be established by evidence of a loss, shown on a more-likely-than-not basis, which considers the facts and circumstances of the loss.

¶21 We conclude that Montana law recognizes a loss of consortium claim by the adult child of an injured parent, and that such a claim, deriving from the common law, is supported by our statutes and Constitution. We have recognized that "judicial modification of the common law is sometimes required to prevent great injustice or to insure that the common law is consonant with the changing needs of society." *Miller v. Fallon County*, 222 Mont. 214, 217-18, 721 P.2d 342, 344 (1986).

¶22 Historically, the law recognized only a husband's loss of consortium claim when injury to his wife was caused by the intentional tort of another. *Pence v. Fox*, 248 Mont. 521, 523, 813 P.2d 429, 431 (1991). The right expanded to include consortium claims when the loss was caused by an act of negligence. *Pence*, 248 Mont. at 523, 813 P.2d at 431. Over time, the law also evolved to recognize the wife's right to bring consortium claims for losses of spousal consortium caused by intentional or negligent acts. *Pence*, 248 Mont. at 523, 813 P.2d at 431. Montana's precedent follows the emerging trend of

expanding common law loss of consortium claims. *See Bear Medicine v. U.S.*, 192 F. Supp. 2d 1053, 1067 (D. Mont. 2002) (recognizing a loss of consortium claim for parents of an adult child, reasoning that the Montana Supreme Court has "recognized repeatedly" its authority and responsibility for developing the common law).

¶23 The first recognition of a wife's claim for loss of consortium caused by a defendant's negligence in Montana occurred in *Duffy v. Lipsman-Fulkerson & Co.*, 200 F. Supp. 71 (D. Mont. 1961), by the Montana Federal District Court. The court noted that a cause of action is established by the combination of two elements: A right on the part of a plaintiff, and an invasion of that right by the defendant. *Duffy*, 200 F. Supp. at 72. Although the court cited statutes defining a wife's rights under a marriage contract to support its opinion, it noted that there was "no express statutory authorization" for such an action and "no Montana Supreme Court decision directly on the point." *Duffy*, 200 F. Supp. at 72. The court reasoned that because the law recognized a husband's claim for loss of consortium caused by another's negligent harm to the wife, the law should recognize the same cause of action brought by the wife of a negligently injured husband. *Duffy*, 200 F. Supp. at 74. Ultimately, the court concluded that "Montana is committed to the common law as the law and rule of decision, and . . . the common law recognized the husband's right to maintain such action." *Duffy*, 200 F. Supp. at 75. Thus, the cause of action the federal court initially recognized is primarily founded in the common law.

¶24 In *Dutton v. Hightower & Lubrecht Constr. Co.*, 214 F. Supp. 298 (D. Mont. 1963), the federal court again addressed the wife's right to bring a loss of consortium

claim for a defendant's negligent injury to her husband. In that case, the court relied on statutes defining the civil contractual relationship between husband and wife as the source of the right to consortium in its analysis. *Dutton*, 214 F. Supp. at 300. The court explained that statutes defining the rights a woman obtains by virtue of her marriage had supplanted the common law, which denied the wife a cause of action or the right to sue for loss of consortium. *Dutton*, 214 F. Supp. at 300. The *Dutton* court did not hold, however, that the source of a right giving rise to a loss of consortium claim necessarily had to be in statute; rather, the court reasoned that the legislature had passed statutes that supplanted the common law, to the extent that the common law had limited a wife's cause of action for loss of consortium due to a defendant's negligence. *Dutton*, 214 F. Supp. at 300.

¶25     Following in the footsteps of the federal court, this Court first recognized a cause of action for loss of consortium by the deprived spouse in *Bain v. Gleason*, 223 Mont. 442, 726 P.2d 1153 (1986). In *Bain*, we determined that the husband of an injured wife could bring a loss of consortium claim "separate and distinct" from the wife's claim against the tortfeasor and that the basis for such a claim was the statutory contractual obligation between husband and wife, set forth in § 40-2-101, MCA. *Bain*, 223 Mont. at 445, 726 P.2d at 1155. We quoted this principle in *Priest v. Taylor*, 227 Mont. 370, 379, 740 P.2d 648, 653 (1987), where we also explained that, though separate and distinct, the spouse's cause of action for loss of consortium is derivative of the other spouse's claim.

We later clarified the relationship between the statutory basis for a consortium claim set forth in *Bain* and the common law:

> Section 40-2-101, MCA, does not "create" the cause of action. It merely defines the obligations which inhere in the marriage relationship and upon which the common law action is based. . . . The statute merely codifies the policy behind the common law by recognizing that spouses contract with one another for mutual obligations.

*Pence*, 248 Mont. at 525, 813 P.2d at 432.

¶26    In *Pence*, we recognized a minor child's loss of consortium claim related to the parent's injuries, where the parent had been rendered quadriplegic by a tortfeasor. We pointed out that like the rights of a spouse, the rights of a child to support, aid, protection, affection and society of the parent derive from both statute and case law. *Pence*, 248 Mont. at 526, 813 P.2d at 432. In recognizing and defining a child's right to parental consortium, we cited with approval the Alaska Supreme Court:

> When a parent is seriously injured, his or her child suffers a loss of enjoyment, care, guidance, love and protection, and is also deprived of a role model. Even courts that deny the parental consortium cause of action have acknowledged the reality of such emotional and psychological injury to the child, and the Alaska legislature has implicitly done so in allowing recovery by children for loss of consortium under Alaska's wrongful death statute.

> Precluding minor children from maintaining a cause of action for loss of parental consortium arising from their parent's injury would, in our view, be inconsistent with the legislature's authorization of such recovery when the parent dies, and with our prior holding in *Fruit* that a husband or wife may recover damages for loss of consortium when an injured spouse survives. The claim for loss of parental consortium presented in this case is not sufficiently distinguishable from either spousal consortium claims in injury cases or children's consortium claims in death cases to warrant nonrecognition.

*Pence*, 248 Mont. at 526-27, 813 P.2d at 433 (quoting *Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991, 994 (Alaska 1987) (citations omitted)). We concluded that the right of minor children to parental aid, protection, affection, society, discipline, guidance and training were supported by the best interest of the child test in custody determinations under § 40-4-212, MCA, and the right of the child to seek damages under Montana's wrongful death statute. *Pence*, 248 Mont. at 527, 813 P.2d at 433.

¶27 We later refined *Pence* in *Keele v. St. Vincent Hosp. & Heath Care Ctr.*, 258 Mont. 158, 852 P.2d 574 (1993), where we held that a parent need not have been rendered quadriplegic by an injury to give rise to a minor child's cause of action for loss of parental consortium. In that case, we adopted the two-part standard for asserting such a cause of action set forth by the Arizona Supreme Court in *Villareal v. Dept. of Transp.*, 774 P.2d 213 (Ariz. 1989). We borrowed heavily from *Villareal* in *Keele* and, here, we once again find the Arizona Supreme Court's remarks worth noting: "'While all family members enjoy a mutual interest in consortium, the parent-child relationship is undeniably unique and the wellspring from which other family relationships derive.'" *Villareal*, 774 P.2d at 217 (quoting *Frank v. Super. Ct.*, 722 P.2d 956, n. 3 (Ariz. 1986)).

¶28 Applying our precedent, the Montana Federal District Court recognized a claim for loss of consortium by the parents of an injured adult child in *Bear Medicine*. We endorsed that application in *Hern v. Safeco Ins. Co. of Ill.*, 2005 MT 301, ¶ 58, 329 Mont. 347, 125 P.3d 597, reasoning that "under certain circumstances . . . the bond between parents and an adult child, and the loss experienced by the parents at the death of or

14

serious injury to their child, may be of such quality as to warrant recovery by the parents for loss of consortium." We explained that the nature of the circumstances giving rise to such a claim was not capable of easy definition or determination and, instead, each case had to be determined based on the facts and evidence presented. *Hern*, ¶ 58. We concluded that "significant evidence of an extraordinarily close and interdependent relationship" was necessary before a court could consider awarding loss of consortium damages to parents of an adult child. *Hern*, ¶ 58. A "high level of proof" was required, encompassing, for instance, evidence that the child had contributed to the parents' financial support or managed their property or holdings. *Hern*, ¶ 61. This recognition reflected the federal court's observation in *Bear Medicine* that "it is proof of the quality of the relationship that should logically govern the extent of any claim by a parent concerning their damages incurred by the death of their adult child." *Bear Medicine*, 192 F. Supp. 2d at 1068. Neither *Bear Medicine* nor *Hern* relied on statutes to establish a legal right to consortium, however. The federal court in *Bear Medicine* found support for its decision to recognize a loss of consortium action for parents of an injured adult child in Montana's wrongful death statute, § 27-1-513, MCA, but primarily based its result in the common law. *Bear Medicine*, 192 F. Supp. at 1068. In *Hern*, this Court relied entirely on *Bear Medicine* in its analysis of the loss of consortium claim there. *Hern*, ¶¶ 50-61.

¶29 The question of whether the adult child of an injured parent may assert a cause of action for loss of consortium is one of first impression in Montana. Other states' courts

have, however, previously addressed this issue.  The Iowa Supreme Court, in *Audubon-Exira Ready Mix, Inc. v. Ill. Cent. & Gulf R.R. Co.*, 335 N.W.2d 148, 152 (Iowa 1983), reconsidered an earlier decision in which it had limited loss of consortium recoveries to minor children, reasoning "even adult and married children have the right to expect the benefit of good parental advice and guidance."  (Quotation omitted.)  The Washington Supreme Court, in recognizing a child's claim for loss of consortium of an injured parent, declined to limit recovery to minor children, but rather left the child's age as a matter for the jury to consider while fixing damages.  *Ueland v. Pengo Hydra-Pull Corp.*, 691 P.2d 190, 195 (Wash. 1984).  The Ohio Supreme Court, extending the loss of parental consortium claim to emancipated, adult children, reasoned:

> [J]ust as minor children look to their parents for emotional support, [middle-aged] adult children who continue to enjoy a close relationship with their parents still depend upon their parents for affection, advice, and guidance as they become older. . . . Therefore, regardless of the age of the child, the loss to the parent-child relationship is real and should not be minimized.

*Rolf v. Tri State Motor Transit Co.*, 745 N.E.2d 424, 426-27 (Ohio 2001).  The trend among other courts is towards allowing recovery for the loss of the intangible benefits inherent in close familial relationships, in light of the enduring nature of family bonds. *See e.g. Marquardt v. United Airlines, Inc.*, 781 F. Supp. 1487, 1491-92 (D. Haw. 1992) (Hawaii law recognizes a claim for loss of filial consortium by parents of an adult child and the action is focused on loss of the intangible elements of love, comfort, companionship and society); *Nelson v. Four Seasons Nursing Ctr.*, 934 P.2d 1104, 1105 (Okla. Civ. App. 1996) ("There is simply no good reason to afford the personal right of

companionship and the parent-child relationship less protection in cases involving adult children who seek to recover for injury to the parent-child relationship."); *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 601 (Tenn. 1999) ("Consortium losses are not to limited to spousal claims but also necessarily encompass a child's loss, whether minor or adult."); *Fitzjerrell v. City of Gallup*, 79 P.3d 836, 840-41 (N.M. Ct. App. 2003) (distinguished by *Lamphere v. U.S.*, No. 06CV2174-LAB (JMA), 2008 U.S. Dist. LEXIS 22917, *13 (S. D. Cal. Mar. 24, 2008)) (allowing a plaintiff to bring a claim for loss of consortium as long as he or she established evidence of a sufficiently close familial relationship and foreseeability of injury to that relationship). We find these authorities persuasive and their rationale consistent with our precedent establishing the common law in Montana.

¶30 Our statutes—although not directly on point—also reflect the recognition that parents and children provide a financial and emotional support system for one another well beyond the time when the child reaches the age of majority. For instance, our statutes require children and parents to support one another, where a child or parent becomes unable to provide for him or herself. Sections 40-6-214, -301, MCA. This Court has previously held that § 40-6-214, MCA, imposes on the parent of disabled adult children who are unable to care for themselves a duty to support the children to the extent of the parent's ability. *In re M.A.S.*, 2011 MT 313, ¶¶ 14-15, 363 Mont. 96, 266 P.3d 1267. It is consistent with the policy underlying our statutory scheme to recognize a cause of action for loss of consortium brought by the adult child of an injured parent.

17

¶31 Finally, Article II, Section 16, of the Montana Constitution provides that "[c]ourts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character." We discussed this right of full legal redress extensively in *Meech v. Hillhaven W.*, 238 Mont. 21, 30, 776 P.2d 488, 493 (1989), concluding that the right is not fundamental, but rather guarantees the right to access the courts to seek a remedy for wrongs recognized by common law or statutory authority.

¶32 We conclude that it is a natural extension of Montana's common law to recognize a cause of action for loss of consortium brought by the adult child of an injured parent. Such an action is consistent with our precedent, which has followed the national trend of expanding circumstances in which the law recognizes a cause of action for loss of consortium. It is further supported by the policy of recognizing the enduring nature of the parent-child relationship which underlies our statutory scheme. Consequently, it is within our Constitution's guarantee of full legal redress for recognized wrongs. We answer the first question in the affirmative.

¶33 *2. If Montana recognizes a claim for loss of consortium by the adult child of an injured parent, what evidentiary standard must the plaintiff meet in order to assert such a claim?*

¶34 NPIC, relying on *Hern*, urges that we limit loss of consortium claims for adult children of injured parents to cases in which there exists "significant evidence" of an "extraordinarily close and interdependent relationship." The defendants and amicus suggest, instead, that we require a claimant, on a more-likely-than-not basis, to establish a

18

loss by presenting evidence to a jury of relevant facts including but not limited to: The severity of injury to the parent; the actual effect the parent's injury has had on the relationship and is likely to have in the future; the child's age; the nature of the child's relationship with the parent; and the child's emotional, physical and geographic characteristics.

¶35    In *Keele*, we set forth the elements a minor child must prove to establish a claim for loss of parental consortium:

> 1) a third party tortiously causes the parent to suffer a serious, permanent and disabling mental or physical injury compensable under Montana law; and
>
> 2) the parent's ultimate condition of mental or physical impairment must be so overwhelming and severe that it causes the parent-child relationship to be destroyed or nearly destroyed.

*Keele*, 258 Mont. at 162, 852 P.2d at 577 (citing *Villareal*, 774 P.2d at 219). Discussing our adoption of that standard, we explained, as had the *Villareal* Court, that the first factor limits a minor child's claim to one for injuries that are "compensable under Montana law"—or derivative of the parent's tort claim. *Keele*, 258 Mont. at 162, 852 P.2d at 577. We also emphasized that the second factor is meant to establish that the destruction or near destruction of the parent-child relationship as a result of the parent's impairment is a necessary element in establishing the cause of action itself, not merely a factor in computing damages. *Keele*, 258 Mont. at 163, 852 P.2d at 577; *see Villareal*, 774 P.2d at 219 ("Not all injuries to parents will result in a child's claim for loss of consortium. We limit our holding to allow loss of consortium claims only when the

parent suffers serious, permanent, disabling injury rendering the parent unable to provide love, care, companionship, and guidance to the child. The parent's mental or physical impairment must be so overwhelming and severe that the parent-child relationship is destroyed or nearly destroyed.") (citations omitted). The requirement in *Hern*, that a parent seeking damages for loss of an adult child's consortium demonstrate evidence of an extraordinarily close and interdependent relationship, instead served to define an evidentiary threshold in an action for wrongful death of an adult child.

¶36 We can see no reason to adopt a different standard from the one set forth in *Keele* where an adult child's claim for loss of parental consortium is at issue. We conclude that the *Keele* standard better reflects the relationship between the parties when it is the parent who suffers a disabling injury; it is only the age of the child that is different from that in *Keele*, and that is a matter for the jury to consider. Once the elements necessary to establish a claim for loss of parental consortium have been met, *Keele*, 258 Mont. at 162, 852 P.2d at 577, we conclude that the factors set forth by the defendants and amicus are relevant to a jury's determination both of whether the *Keele* factors have been satisfied, and of what damages are appropriate. These factors, in fact, derive from *Villareal*. The *Villareal* Court, in setting the standard we adopted as modified in *Keele*, explained:

> To bring a consortium claim, the child/plaintiff must show that the defendant injured the child's parent in a manner that would subject the defendant to liability under ordinary tort principles. The injury to the parent must cause severe damage to the parent-child relationship. The child may recover for the loss of the parent's love, affection, protection, support, services, companionship, care, and society. In determining the amount of damages to award the child, relevant factors include, but are not limited to, the child's age, the nature of the child's relationship with the parent, the

20

child's emotional and physical characteristics, and whether other consortium-giving relationships are available for the child.

*Villareal*, 774 P.2d at 220-21. Thus, while we decline to adopt a new standard, we endorse the practice of presenting evidence—including, but not limited to, evidence of the severity of injury to the parent; the actual effect the parent's injury has had on the relationship and is likely to have in the future; the child's age; the nature of the child's relationship with the parent; and the child's emotional, physical and geographic characteristics—which tends to illustrate the nature of the loss to the jury. This is consistent with *Hern*'s recognition that each case must be determined on the facts and evidence presented. *Hern*, ¶ 58.

¶37 The special relationship factor proposed by NPIC would impose too harsh a limitation on an adult child's cause of action for loss of consortium. The cause of action we recognize under the common law is not limited by its statutory "basis" as NPIC argues. Because our statutes do not define a cause of action, the common law governs, and may find support in the statutory framework. *See Pence*, 248 Mont. at 525, 813 P.2d at 432. Although we recognize that the nature of the parent-child relationship may change when the child reaches adulthood, the child's need for parental support, aid, protection, affection, society, discipline, guidance and training do not evaporate upon reaching the age of majority. Rather, as the Ohio Supreme Court recognized in *Rolf*, an adult child's need for a parent's guidance may change or re-emerge as the child confronts the different obstacles he or she meets in new phases of life. As an "independent person who is expected to navigate his or her own way through life" the adult child's path may

21

be illuminated and smoothed by the benefit of a parent's wisdom, love and insight. The extent and nature of the child's need for a close parent-child relationship, and the extent of the injury to the parent's ability to participate in one, may be evaluated by the jury as it determines whether the *Keele* factors have been satisfied and, if so, contemplates damages. It is worth noting, as well, that an adult child's reliance on a parent for guidance and support is likely different from the parent's reliance on a child that we discussed in *Hern*. No "extraordinarily close and interdependent relationship" is required for an adult child to be harmed, or even devastated, by the effective loss of a close parent-child relationship.

## CONCLUSION

¶38 We conclude that Montana law recognizes a claim for loss of consortium brought by the adult child of an injured parent. To establish a cause of action for loss of consortium, the plaintiff must establish: 1) a third party tortiously caused the parent to suffer a serious, permanent and disabling mental or physical injury compensable under Montana law; and 2) the parent's ultimate condition of mental or physical impairment is so overwhelming and severe that it has caused the parent-child relationship to be destroyed or nearly destroyed. In establishing his or her claim, the plaintiff may present evidence of factors including but not limited to the severity of injury to the parent; the actual effect the parent's injury has had on the relationship and is likely to have in the future; the child's age; the nature of the child's relationship with the parent; and the child's emotional, physical and geographic characteristics.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER

Justice Beth Baker, concurring.

¶39    I join the Court's opinion and write to emphasize two points.  First, loss of consortium claims spring from the common law, not from any statute, and exist to address interests beyond those the statutes on children and families are designed to protect.  Second, there are significant legal and policy reasons to support extension of the common law to allow adult children to bring a claim for loss of consortium under appropriate circumstances.

¶40    The Dissent criticizes the Court for characterizing Montana law as part of a "national trend" of expanding circumstances under which a claim for loss of consortium is allowed, opining that a majority of states do not recognize a claim for loss of consortium by adult children.  Dissent, ¶ 63.  A survey of state case law shows considerable variation among those courts that have considered the question.  *See* Marjorie A. Shields, Annotation, *Adult Child's Right of Action for Loss of Parental Consortium*, 12 A.L.R.6th 241, § 2 (2006 & Supp. 2014) (noting that "[a] number of courts" recognize an adult child's right of action for loss of parental consortium in an action involving a nonfatal injury to the parent; that "[a] few courts" have recognized

23

limited rights of an adult child in such cases; and that "[o]ne court declined to recognize an adult child's right of action for loss of parental consortium" in a nonfatal injury case); *Brooks v. Harley-Davidson Motor Co.*, 2009 U.S. Dist. LEXIS 74867, 9-10 (E.D. Pa. 2009) (citing three states that have not recognized a loss of consortium claim in cases involving relationships between parents and adult children and six states that have recognized a claim by adult children). Neither the parties nor the Dissent cite a case in which a state's highest court squarely rejected an adult child's claim for loss of consortium where it previously had recognized such a common law claim for a minor child—the issue we face here.[1]

¶41    In actuality, there appear to be relatively few recent court decisions that decide the issue one way or the other. But much has been written about the topic, and "most legal commentary favors recognition" of a cause of action for a child's loss of parental consortium, citing such factors as "'the fundamental importance of the parent-child relationship, the genuineness of the loss sustained, and the administrative feasibility of

---

[1] Of the five states the Dissent cites as having "specifically denied" an adult child's claim, Dissent, ¶ 63, two do not recognize even a minor child's claim for loss of consortium when a parent is injured. *Lewis v. Rowland*, 701 S.W.2d 122, 123 (Ark. 1985); *Natalini v. Little*, 92 P.3d 567, 570 (Kan. 2004). One case considered, and rejected, only the claim of a non-adopted adult *step*-child. *Mendoza v. B.L.H. Electronics*, 530 N.E.2d 349, 350 (Mass. 1988). In another, an intermediate appellate court concluded that any extension of a right of action must come from either the legislature or the state's supreme court. *Smith v. Vilvarajah*, 57 S.W.3d 839, 844 (Ky. Ct. App. 2000). In the fifth, the Wisconsin Supreme Court decided for the first time that a minor child may bring a cause of action for the loss of a parent's society and companionship resulting from another's negligence. *Theama v. Kenosha*, 344 N.W.2d 513 (Wis. 1984). The injured party's children were minors when the injury occurred and the case did not involve a claim brought on behalf of an adult child. In a concluding sentence, the court "presently limit[ed] recovery under this cause of action to the child's minority, because the minor is one whose relationship is most likely to be severely affected by a negligent injury to the parent." *Theama*, 344 N.W.2d at 522.

allowing compensation.'" 131 Am. Jur. Proof of Facts 3d 187, *Loss of Consortium in Parent-Child Relationship*, § 3 (quoting Jean C. Love, *Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship*, 51 Ind. L.J. 590, 634 (1976)). Montana accepted this principle in *Pence* and *Keele*, when we allowed a minor child to bring a loss of consortium claim for a parent's injuries.

¶42 Although the Dissent finds no expressed reason to recognize such a claim after the child has reached the age of majority, numerous reasons exist to support this logical extension of existing law. First, this is not an area of the law in which rights of recovery derive from statutory duties. A claim for loss of consortium seeks to compensate for the "aid, protection, affection and society" of the injured person, *Bain*, 223 Mont. at 445, 726 P.2d at 1155, not for financial support that the injured person is charged by statute with providing for a child. It is a claim that has its genesis in the common law, and addresses "injuries to emotional well-being." 2 Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 392, 583 (2d ed. 2011). Recognizing that the husband had a right at common law to maintain an action for loss of consortium, *Dutton* held that, as "the purpose of the 'Married Women's Act'[2] was to place the wife on a parity with the husband insofar as enforcing contractual rights in the courts," she also has the right to recover for loss of consortium. "Montana is committed to the common law as the law and rule of decision, absent statutory law, and . . . Montana has enacted no statute taking away this common law right of the husband" to maintain an action for loss of consortium.

---

[2] S*ee* §§ 36-110, 36-128, R.C.M. (1947).

*Dutton*, 214 F. Supp. at 300-01. The Married Women's Act simply served to abolish common law barriers that were based on outdated historical concepts.

¶43 We expressly rejected the argument in *Pence* that the claim for loss of consortium derived from statutes giving a husband and wife contractual obligations of mutual respect, fidelity, and support. Section 40-2-101, MCA. "The inaccuracy of the defendants' conclusion that the legislature created the claim through § 40-2-101, MCA, is proven by the fact that the statute has been on the books since 1895, but it was not until 1986 that this Court recognized the claim. The statute merely codifies the policy behind the common law by recognizing that spouses contract with one another for mutual obligations." *Pence*, 248 Mont. at 525, 813 P.2d at 432. The same common law rule vesting the husband with all rights to recover for injuries to his wife gave the father an ownership interest in the services of his children and the right to recover the pecuniary value of those services when deprived of them through a defendant's intentional or negligent conduct. David P. Dwork, Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent*, 56 B.U.L. Rev. 722, 726 (1976). These vestiges of the common law slowly have been whittled away by the courts to allow wives and children to bring independent claims in their own rights. Opinion, ¶¶ 22-29.

¶44 Second, the Dissent's reliance on the statutory basis for damages in wrongful death actions to deny a common law claim in nonfatal injury cases is misplaced. Wrongful death actions are a creature of statute, but actions for personal injury are not.

26

Under Montana law, the legislature enacts statutes to *limit* rights that otherwise would be available at common law. "***Except as otherwise provided by law***, each person is responsible not only for the results of the person's willful acts but also for an injury occasioned to another by the person's want of ordinary care or skill in the management of the person's property or person except so far as the person has willfully or by want of ordinary care brought the injury upon the person." Section 27-1-701, MCA (emphasis added). Moreover, we reaffirmed just recently that "Montana does not statutorily define wrongful death claimants, but through the common law has identified survivors who may claim wrongful death damages, as well as the parameters of recovery." *In re Estate of Bennett*, 2013 MT 230, ¶ 11, 371 Mont. 275, 308 P.3d 63 (citing cases).

¶45    In this regard, recovery under Montana's wrongful death statute is no different from recovery in nonfatal injury cases. Section 27-1-323, MCA, allows a wrongful death claimant to recover "such damages . . . as under all the circumstances of the case may be just." Similarly, "[t]he law of torts 'attempts primarily to put an injured person in a position as nearly as possible equivalent to his position prior to the tort.'" *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 32, 338 Mont. 259, 165 P.3d 1079 (quoting Restatement (Second) of Torts § 901 cmt. a (1997); *Butler v. Germann*, 251 Mont. 107, 110, 822 P.2d 1067, 1069 (1991)). Accordingly, "Montana law provides for monetary compensation to every person who suffers detriment from the unlawful act or omission of another." *Henricksen v. State*, 2004 MT 20, ¶ 76, 319 Mont. 307, 84 P.3d 38 (citing § 27-1-202, MCA); *see, e.g.*, Montana Pattern Instructions (MPI2d) 25.00 (published by

27

the State Bar of Montana, 2003) ("If you find for the plaintiff on the question of liability, then you must determine the amount of money which will reasonably and fairly compensate the plaintiff for all loss caused by the defendant(s), regardless of whether such loss could have been anticipated.").

¶46 Finally, "courts have increasingly recognized and expanded the field of children's rights." Katarina Donohue, *Should California Extend its Current Law on Loss of Consortium to the Parent-Child Relationship In Cases Where the Child or Parent Has Been Negligently Injured by a Third Party?*, 5 Whittier J. Child & Fam. Advoc. 625, 634 (2005-2006). I have little trouble concluding, as have numerous other courts, "that the two relationships likely to be most severely affected by a negligent injury to a person are the husband and wife relationship and that of the parent and child[.]" *Reagan v. Vaughn*, 804 S.W.2d 463, 466 (Tex. 1990). It certainly is foreseeable that a child will be severely impacted by a serious injury to the parent, even if the child is over eighteen at the time that injury occurs.

¶47 The loss of a parent's "care, companionship, and education" is "a genuine injury, and a serious one." William L. Prosser, *Handbook of the Law of Torts*, § 125, 896 (4th ed. 1971); *see also* Dobbs et al., § 392. Although the legal duty of financial support may in most cases terminate when a child reaches adulthood, *but see In re M.A.S.*, ¶¶ 14-15, the law should not impose such an artificial extinguishment when it comes to the inherent filial right to a parent's affection, aid, and society. Rather, it is the nature of the

28

parent-child relationship and the destruction of that relationship that should serve to determine whether the cause of action is available.

¶48 Obviously, the older and more independent the child, and the further the distance between child and parent—geographically or emotionally—the more attenuated a loss of consortium claim becomes. *Ueland v. Pengo Hydra-Pull Corp.*, 691 P.2d 190, 195 (Wash. 1984). But the Court today properly leaves to the trial court the decision whether a sufficient claim has been made in the case before it to allow consideration by the jury. Opinion, ¶ 36. Based on the facts to which the parties have stipulated, I concur that such a claim has been stated by Sadee Stucky.


/S/ BETH BAKER


Justice Laurie McKinnon, dissenting.

¶49 The Court begins from the proposition that "'judicial modification of the common law is sometimes required to prevent great injustice or to insure the common law is consonant with the changing needs of society.'" Opinion, ¶ 21 (quoting *Miller v. Fallon Cnty.*, 222 Mont. 214, 217-18, 721 P.2d 342, 344 (1986)). This is a noble statement. Our responsibility to "reform common law as justice requires," *Pence v. Fox*, 248 Mont. 521, 524, 813 P.2d 429, 431 (1991), however, does not lead inevitably to the result reached by the Court today.

¶50 The Court relies heavily on precedent expanding the recognition of loss of consortium claims, which were historically available only to compensate a husband for

29

injury to his wife. Opinion, ¶ 22. This analogy is inapt. The expansion of this cause of action to provide equal redress for women was based upon the mutual rights and obligations inhering in the marriage contract, recognized in statute, and further supported by legislative policy intended "to place husband and wife upon a parity." *Duffy v. Lipsman-Fulkerson & Co.*, 200 F. Supp. 71, 74 (D. Mont. 1961). Without question, the common law in many instances harbored great injustices against women, and courts were justified in recognizing reforms "consonant with the changing needs of society." *Miller*, 222 Mont. at 218, 721 P.2d at 344. With respect to the question we face today, however, "'the reasoning supporting the recognition of the wife's claim, to end an [u]njust discrimination in the law, is not applicable to a child's claim for loss of parental consortium.'" *W.J. Bremer Co. v. Graham*, 312 S.E.2d 806, 808 (Ga. Ct. App. 1983) (quoting *DeAngelis v. Lutheran Med. Ctr.*, 84 A.D.2d 17, 26 (N.Y. App. Div. 1981), *aff'd*, 449 N.E.2d 406 (N.Y. 1983)). In relying generally on its authority to develop the common law, Opinion, ¶¶ 21-22, the Court misses the fact that substantially different social policies and historical circumstances justified the expansion of the cause of action to allow redress for wives as well as husbands.

¶51 The Court also mischaracterizes the relationship between the loss of consortium cause of action and its foundation in a pre-existing legal right, which was relied upon by the federal court in *Duffy*. 200 F. Supp. at 72-73. As the Court notes, *Duffy* looked to two elements defining a cause of action: a right on the part of the plaintiff, and the

violation of that right by the defendant. Opinion, ¶ 23; 200 F. Supp. at 72. The court stated:

> Turning then to the first element of a cause of action, *the existence of a right in the plaintiff*, it is clear under Montana law that a wife obtains certain rights by virtue of the marriage relationship. [Section] 48-101, R.C.M. 1947, provides that marriage is a personal relation arising out of a civil contract, to which the consent of parties capable of making it is necessary. [Section] 36-101, R.C.M. 1947, provides that upon entering into a marriage, the husband and wife contract toward each other obligations of mutual respect, fidelity and support. Thus the mutual rights which arise in the husband and wife upon marriage may be termed contractual rights or legal rights. It is also clear that included in these rights which arise upon marriage are rights which are embraced within the meaning of the term consortium . . . .

*Duffy*, 200 F. Supp. at 72-73 (emphasis added); *see also Dillon v. Great N. Ry.*, 38 Mont. 485, 496, 100 P. 960, 963 (Mont. 1909) (cause of action sounding in tort "is composed of *the right of the plaintiff* and the wrong of the defendant") (emphasis added).

¶52    The recognition of a cause of action requires the existence of a legal right, which the *Duffy* court found both in Montana's statutes and in the marriage contract. 200 F. Supp. at 72-73. Two years later, the federal court again confronted the question, and again based its recognition of the cause of action on existing statutory and common law rights. *Dutton v. Hightower & Lubrecht Constr. Co.,* 214 F. Supp. 298, 300 (D. Mont. 1963). The *Dutton* court explained that the right of a husband to recover for the loss of his wife's consortium existed in common law, and that those aspects of the common law denying a wife the same right had been changed by statute. 214 F. Supp. at 300-01. Neither *Duffy* nor *Dutton* created new rights; they recognized rights existing at common law and the manner in which legislative action had altered the common law.

31

¶53    When this Court addressed the issue in 1986, it held "that the basis for a consortium claim lies in the Montana statutes in which the husband and wife contract for obligations of mutual respect, fidelity, and support," again referring to rights existing at common law and in contract, and the specific recognition of those rights by the legislature. *Bain v. Gleason*, 223 Mont. 442, 445, 726 P.2d 1153, 1155 (1986) (citing § 40-2-101, MCA). *Bain* did not create "a legal right to the aid, protection, affection and society of the other spouse," but acknowledged that such right already existed and thus deserved legal protection. 223 Mont. at 445, 726 P.2d at 1155.

¶54    In *Pence*, we were asked to address whether two minor children had a cause of action for loss of parental consortium when their father had been injured and rendered quadriplegic. 248 Mont. at 522, 813 P.2d at 403. In expanding the cause of action to parties other than spouses, we continued to rely on the existence of common law and statutory rights. *Pence*, 248 Mont. at 525-26, 813 P.2d at 432. *Pence* relied on § 40-6-211, MCA, which then stated: "The parent or parents entitled to custody of a child must give him support and education suitable to his circumstances."[1] 248 Mont. at 525, 813 P.2d at 432. *Pence* also recognized that this statute, like statutes governing marriage, codified pre-existing common law rights. 248 Mont. at 525-26, 813 P.2d at 432 ("Like the rights of a wife, the rights of the child to support, aid, protection, affection and society of the parent derive from both statute and case law.") We later concluded that the parent need not be rendered quadriplegic in order for his or her minor children to

---

[1] Section 40-6-211, MCA, now reads: "The parent or parents of a child shall give the child support and education suitable to the child's circumstances."

32

claim loss of consortium. *Keele v. St. Vincent Hosp. & Health Care Ctr.*, 258 Mont. 158, 161, 852 P.2d 574, 576 (1993). We continued to recognize that our expansion of the loss of consortium cause of action had its roots in both statutory and common law concepts: that is, upon finding an existing statutory right, we appropriately recognized a cause of action allowing aggrieved parties to recover for the violation of that right. *Pence*, 248 Mont. at 525-26, 813 P.2d at 432. Our development of the common law was therefore based on existing legal rights. Though we recognized new claims allowing the enforcement of those rights, we did not create the rights themselves from whole cloth.

¶55 Each of the cases cited above addressed a common law loss of consortium claim based on non-fatal injuries to a spouse or parent. Another line of cases addresses damages for loss of consortium brought in the context of a statutory wrongful death action. Our consideration of the relationship between adults and their parents has been limited to the context of statutory wrongful death actions, until today. In *Dawson v. Hill & Hill Truck Lines*, 206 Mont. 325, 671 P.2d 589 (1983), we recognized that pursuant to our wrongful death statutes, parents were entitled to recover loss of consortium damages following the wrongful death of a minor child. Based on this decision, we later held that children, regardless of minority or majority, were entitled to recover loss of consortium damages following the wrongful death of a parent. *Ewalt v. Scott*, 206 Mont. 503, 675 P.2d 77 (1983). We based these holdings on our construction of § 27-1-323, MCA, which provides that in a wrongful death action, "such damages may be given as under all the circumstances of the case may be just."

33

¶56    In *Bear Medicine v. United States*, 192 F. Supp. 2d 1053, 1067-68 (D. Mont. 2002), the federal court applied the holdings of *Dawson* and *Ewalt* to conclude that Montana law would likely allow a parent to recover loss of consortium damages following the death of an adult child.[2]    In *Renville v. Frederickson*, 2004 MT 324, ¶¶ 22-23, 324 Mont. 86, 101 P.3d 773, we concluded that a mother was not the proper party to bring a wrongful death action because she was not the personal representative of her adult son's estate, but affirmed that "loss of consortium and loss of comfort and society damages are examples of 'just' damages available in wrongful death actions," referring again to our interpretation of § 27-1-323, MCA.

¶57    In *Hern v. Safeco Insurance Co. of Illinois*, 2005 MT 301, ¶ 48, 329 Mont. 347, 125 P.3d 597, we again addressed a wrongful death action, as we had done in *Renville* and as the federal court had done in *Bear Medicine*.  The mother of the deceased adult in that case argued that "§ 27-1-323, MCA recognizes a broad range of damages 'as under all the circumstances of the case may be just.'"  *Hern*, ¶ 49.  Following the lead of the federal court in *Bear Medicine*, which relied on Kicking Woman's role as a spiritual leader within his tribe and his contributions to running his parents' ranch, we concluded that the parent of a deceased adult could claim loss of consortium damages where there

---

[2] In *Bear Medicine*, Leland Kicking Woman was injured in a logging accident and died nine months later as a result of those injuries.  192 F. Supp. 2d at 1060.  Under these facts, I admit it may be unclear, on a first reading, whether the court awarded loss of consortium damages to Kicking Woman's parents for the period during which he survived, but was severely injured, or for his wrongful death.  This ambiguity is resolved by the court's statements that "[l]oss of consortium damages are recoverable in wrongful death cases and are appropriate under the facts of this case," and "[l]oss of consortium damages compensate the plaintiff for the loss of care, comfort, society and companionship of *the decedent*."  *Bear Medicine*, 192 F. Supp. 2d at 1070 (emphasis added).

34

existed "significant evidence of an extraordinarily close and interdependent relationship." *Hern*, ¶¶ 52-58.

¶58 The Court is simply wrong when it states that "[n]either *Bear Medicine* nor *Hern* relied on statutes to establish a legal right to consortium . . . ." Opinion, ¶ 28. Both *Bear Medicine* and *Hern* were wrongful death actions, and therefore relied on the wrongful death statutes. Sections 27-1-323, -513, MCA. Unlike a common law loss of consortium claim resulting from a non-fatal injury, "[a] cause of action for wrongful death is a legislative creation." *Renville*, ¶ 25. *Bear Medicine* and *Hern* interpreted and applied our wrongful death statutes, as enacted by the legislature, to determine what damages were "just" in those cases. Sections 27-1-323, -513, MCA.

¶59 We have been asked to decide whether an adult may bring an independent common law claim for loss of consortium resulting from non-fatal injuries to her father. In so deciding, we may not rely on the breadth of our wrongful death statutes, but must return instead to those cases addressing the availability of the cause of action under the common law. Those cases have allowed claims for loss of consortium to be brought only by spouses or minor children. *See Dutton*, 214 F. Supp. at 299-300; *Duffy*, 200 F. Supp. at 72; *Keele*, 258 Mont. at 159, 852 P.2d at 575; *Pence*, 248 Mont. at 522, 813 P.2d at 430; *Bain*, 223 Mont. at 445, 726 P.2d at 1155. Recognition of a claim by an adult for the loss of consortium with his or her parent is not "a natural extension of Montana's common law." Opinion, ¶ 32. Rather, it is a distinct departure from the logic that has governed our previous analysis.

35

¶60 Our precedent, until now, has followed the approach outlined by the federal court in *Duffy*: in recognizing a new cause of action, we have first looked for an existing right on the part of the plaintiff. 200 F. Supp. at 72; *Dillon*, 38 Mont. at 496, 100 P. at 963. In *Duffy*, *Dutton*, and *Bain*, that right was found to inhere in the marital obligation and attendant rights, as recognized both at common law and by statute. *Dutton*, 214 F. Supp. at 300; *Duffy*, 200 F. Supp. at 72-73; *Bain*, 223 Mont. at 445, 726 P.2d at 1155. In *Pence* and *Keele*, that right was found in the legal obligation of a parent to support his or her child, existing both at common law and in statute. *Keele*, 258 Mont. at 161, 852 P.2d at 576; *Pence*, 248 Mont. at 526, 813 P.2d at 432.

¶61 The Court departs from this precedent by premising its recognition of a new cause of action on a relational interest, rather than a legal one. The Court cites no authority establishing the right of an emancipated adult to receive the aid, protection, affection, and society of a parent. While minor children have a right to receive care necessary for their emotional well-being, *In re C.M.S.*, 187 Mont. 115, 122-24, 609 P.2d 240, 243-45 (1979), an adult has no similar right to be provided with affection, advice, or other benefits conducive to emotional well-being. An adult has no legal right to be supported, whether emotionally or financially, by his or her parent. *See In re Marriage of Haberkern*, 2004 MT 29, ¶ 20, 319 Mont. 393, 85 P.3d 743 ("In Montana, parental obligation to support minor children ends when a child reaches the age of majority . . . ."). This can be a harsh reality, as many young adults discover, but it is no less true for that. The Court recognizes that we have no statutes "directly on point" which would establish such a right

36

or obligation. Opinion, ¶ 30 (citing §§ 40-6-214, -301, MCA, establishing obligations of support between parents and adult children limited to circumstances of indigence or disability). Instead, the Court broadly states, with no support in Montana law, that "'even adult and married children have the right to expect the benefit of good parental advice and guidance.'" Opinion, ¶ 29 (quoting *Audubon-Exira Ready Mix, Inc. v. Ill. Cent. & Gulf R.R.*, 335 N.W.2d 148, 152 (Iowa 1983)). They may well expect it, but in Montana they have no existing legal right to it.

¶62 By contrast, in Iowa, a statute provides that in cases of "wrongful or negligent injury or death," damages may be recovered for "the value of services and support as spouse or parent, or both . . . ." Iowa Code § 613.15 (2013). It is this provision that the Iowa Supreme Court relied on in allowing a child to recover damages for loss of parental consortium in cases of non-fatal injury. *Audubon-Exira Ready Mix, Inc.*, 335 N.W.2d at 151-52. The Iowa Supreme Court did not create a new right simply because it valued the parent-child relationship. Rather, it interpreted the language of § 613.15 and found it did not limit the availability of damages to the period of a child's minority, and in so doing, it actually retracted previous recognition of a child's independent common law claim for loss of parental consortium. *Audubon-Exira Ready Mix, Inc.*, 335 N.W.2d at 152. The court relied on public policy to support its statutory interpretation. *Audubon-Exira Ready Mix, Inc.*, 335 N.W.2d at 152. Our pronouncements about the "enduring nature of the parent-child relationship," Opinion, ¶ 32, serve no similar purpose, as we have no applicable statute—outside the context of a wrongful death—to interpret.

¶63    While the Court cites a "national trend" in support of expanding recognition of claims for loss of consortium, Opinion, ¶ 32, the majority of jurisdictions do not allow an adult to bring a claim for loss of consortium with his or her injured parent. *See* 131 Am. Jur. Proof of Facts 3d *Loss of Consortium in Parent-Child Relationship* § 4 (2013). The Concurrence observes that "there appear to be relatively few recent court decisions that decide the issue one way or the other." Concurrence, ¶ 41. Indeed, only five jurisdictions have decisively concluded that an adult may bring a cause of action or claim damages for loss of consortium when his or her parent is severely injured. *See Audubon-Exira Ready Mix, Inc.*, 335 N.W.2d at 152; *Rolf v. Tri State Motor Transit Co.*, 745 N.E.2d 424, 427-28 (Ohio 2001); *Nelson v. Four Seasons Nursing Ctr.*, 934 P.2d 1104, 1105 (Okla. Civ. App. 1996); *Reagan v. Vaughn*, 804 S.W.2d 463, 466 (Tex. 1990); *Ueland v. Pengo Hydra-Pull Corp.*, 691 P.2d 190, 195 (Wash. 1984).[3] An equal number have specifically denied an adult's right to bring a cause of action for loss of consortium with an injured parent. *See Lewis v. Rowland*, 701 S.W.2d 122, 124 (Ark.

_____

[3] The Concurrence cites *Brooks v. Harley-Davidson Motor Co.*, 2009 U.S. Dist. LEXIS 74867 at *10 (E.D. Pa. Aug. 21, 2009), which observed that six states had recognized such a claim. One of the states referred to, Arizona, recognized a child's claim for loss of parental consortium in a consolidated appeal involving several families. *Villareal v. Ariz. Dept. of Transp.*, 774 P.2d 213 (Ariz. 1989). One of these, the Villareal-Garcia family, included an adult daughter claiming loss of parental consortium with her injured father. The Villareal-Garcia family settled before the appeal was resolved, and thus the Arizona Supreme Court stated that its holding would apply only to the Newman and Fuentes children, who were minors. *Villareal*, 774 P.2d at 219-20. The Arizona Supreme Court reasoned that recognizing the cause of action was consistent with "increased recognition and awareness of children as persons with rights," a consideration irrelevant to recognition of an adult's claim. *Villareal*, 774 P.2d at 217. Additionally, in Hawaii, the United States District Court has surmised that the Hawaii Supreme Court would likely overturn a 1957 case and allow an adult's claim for loss of parental consortium in cases of non-fatal injury. *Marquardt v. United Airlines, Inc.*, 781 F. Supp. 1487, 1491 (D. Haw. 1992). The Hawaii Supreme Court has not yet acted. For these reasons, I cannot with confidence say that either Arizona or Hawaii recognizes the cause of action.

1985); *Natalini v. Little*, 92 P.3d 567, 570 (Kan. 2004); *Smith v. Vilvarajah*, 57 S.W.3d 839, 841 (Ky. Ct. App. 2000); *Mendoza v. B.L.H. Electronics*, 530 N.E.2d 349, 350 (Mass. 1988) (declining to extend cause of action to adult stepchildren); *Theama v. City of Kenosha*, 344 N.W.2d 513, 522 (Wisc. 1984). The Concurrence fails to observe the large number of jurisdictions in which an adult's cause of action for loss of parental consortium is unlikely ever to be addressed, because the same cause of action by a minor child has already been rejected. *See Borer v. Am. Airlines*, 563 P.2d 858, 860-61 (Cal. 1977); *Lee v. Colo. Dept. of Health*, 718 P.2d 221, 234 (Colo. 1986); *Mendillo v. Bd. of Educ.*, 717 A.2d 1177, 1187-88 (Conn. 1998); *W.J. Bremer Co.*, 312 S.E.2d at 808; *Huter v. Ekman*, 484 N.E.2d 1224, 1226 (Ill. App. Ct. 1985); *Dearborn Fabricating & Eng'g Corp. v. Wickham*, 551 N.E.2d 1135, 1139 (Ind. 1990); *Durepo v. Fishman*, 533 A.2d 264, 264 (Me. 1987); *Monias v. Endal*, 623 A.2d 656, 661 (Md. 1993); *Salin v. Kloempken*, 322 N.W.2d 736, 737 (Minn. 1982); *Thompson v. Love*, 661 So. 2d 1131, 1131-32 (Miss. 1995); *Powell v. Am. Motors Corp.*, 834 S.W.2d 184, 186 (Mo. 1992); *Guenther v. Stollberg*, 495 N.W.2d 286, 289 (Neb. 1993); *Gen. Elec. Co. v. Bush*, 498 P.2d 366, 371 (Nev. 1972); *Harrington v. Brooks Drugs*, 808 A.2d 532, 534 (N.H. 2002); *Russell v. Salem Transp. Co.*, 295 A.2d 862, 863 (N.J. 1972); *DeAngelis*, 449 N.E.2d at 407; *Vaughn v. Clarkson*, 376 S.E.2d 236, 238 (N.C. 1989); *Butz v. World Wide, Inc.*, 492 N.W.2d 88, 93 (N.D. 1992); *Norwest v. Presbyterian Intercommunity Hosp.*, 652 P.2d 318, 319 (Ore. 1982); *Steiner v. Bell Tel. Co.*, 517 A.2d 1348, 1349 (Pa. Super. Ct. 1986); *Taylor v. Beard*, 104 S.W.3d 507, 511 (Tenn. 2003). In an additional three states,

the parties who may claim loss of consortium damages in cases of nonfatal injury are limited by statute and do not include emancipated adults, *see* Fla. Stat. § 768.0415 (2014); R.I. Gen. Laws § 9-1-41 (2014); S.C. Code Ann. § 15-75-20 (2013), and one state, Utah, recognizes no independent causes of action for loss of consortium, *Boucher v. Dixie Med. Ctr.*, 850 P.2d 1179, 1184-85 (Utah 1992). In all, an adult's cause of action for loss of consortium with an injured parent is precluded in 30 states. This is not an undeveloped area of law in which persuasive authority is lacking. The "trend" referred to by the Opinion, ¶ 32, and the "legal commentary" cited by the Concurrence, ¶ 41, are decidedly in the minority.

¶64 Furthermore, the decisions of other states cited by the Court do not necessarily support its position. As noted, the Iowa Supreme Court relied on a statutory right to recover damages for loss of parental services and support. *Audubon-Exira Ready Mix, Inc.*, 335 N.W.2d at 152. In fact, the court later declined to allow the parents of a deceased adult to bring an independent cause of action for loss of consortium or to claim loss of consortium damages in their wrongful death suit, in the absence of an existing statutory or common law right. *Kulish v. W. Side Unlimited Corp.*, 545 N.W.2d 860, 862-63 (Iowa 1996). Two of the cases which the Court notes we relied on in *Pence*, *Hibpshman v. Prudhoe Bay Supply, Inc.*, 734 P.2d 991, 997 (Alaska 1987), and *Villareal v. Arizona Department of Transportation*, 774 P.2d 213, 215 (Ariz. 1989), addressed only claims brought by minor children, and are not persuasive in our consideration of a claim brought by an adult.

¶65 The Court also cites a Tennessee case, *Jordan v. Baptist Three Rivers Hospital*, 984 S.W.2d 593, 596 (Tenn. 1999), which interpreted that state's wrongful death statutes, but fails to observe that the *Jordan* court "express[ed] no opinion as to whether the loss of parental consortium may be recovered in personal injury actions in which the parent or parents survive." Indeed, in a later case, the Tennessee Supreme Court "decline[d] to create a common law cause of action for loss of parental consortium in personal injury cases." *Taylor*, 104 S.W.3d at 511. In so doing, the court reasoned:

> In our view, the appellants do not simply request that we remove an impediment to the continual development of the common law, nor do they ask us to interpret an ambiguous statutory or constitutional provision. Rather, the appellants ask this Court to declare the public policy of this State by creating a previously unrecognized common law cause of action in an area where the legislature has taken action.

*Taylor*, 104 S.W.3d at 510-11. I believe we face the same circumstance in this case. Because I can find no existing legal right which has been violated, *Duffy*, 200 F. Supp. at 72, I do not join the Court in declaring that an adult may bring a cause of action for the loss of consortium with his or her injured parent.

¶66 In addressing whether an adult has a cause of action in such circumstances, the Concurrence observes that independent loss of consortium claims "spring from the common law," and thus do not require the existence of a statutory right. Concurrence, ¶ 39. Any cause of action, however, requires a legal right on the part of the plaintiff. *Dillon*, 38 Mont. at 496, 100 P. at 963. Sadee Stucky's cause of action for loss of parental consortium does not have to be founded on a statute, but it does have to be founded on a legal right to the affection and society of her father. A minor child has a

legal right to receive emotional and physical care from a parent. *C.M.S.*, 187 Mont. at 122-24, 609 P.2d at 243-45. A spouse has a legal right to the aid, protection, affection and society of the other spouse. *Bain*, 223 Mont. at 445, 726 P.2d at 1155. An adult— even a young adult—has no legal right to continue to receive the affection and society of a parent. Parental support is nice to have, but it is not a legal entitlement. The "inherent filial right" referred to by the Concurrence, ¶ 47, is not found anywhere in our law. Absent a legally cognizable right, a cause of action cannot be stated. *Dillon*, 38 Mont. at 496, 100 P. at 963.

¶67 The Concurrence states that "there are significant legal and policy reasons" to allow an adult to bring a cause of action for loss of consortium with an injured parent. Concurrence, ¶ 39. Despite this assertion, the Concurrence provides no Montana precedent establishing the legal right at issue. Instead, the Concurrence cites "legal commentary" favoring increased recognition of children's rights. Concurrence, ¶¶ 40, 43, 46. Children's rights are not at issue here. There is no impediment to the ability of an eighteen-year-old woman to bring a legal action, provided she has suffered legal injury.

¶68 To that end, the Concurrence also cites cases and commentary stating that injured persons should be compensated for their losses. Concurrence, ¶ 45. The sources cited, however, refer to persons who have been directly injured. When we are asked to define the category of injured persons, it does not advance that inquiry to state that an injured person is entitled to compensation. Liability must end somewhere; a line must be drawn.

In recognizing an "inherent filial right" rather than a legally cognizable one, we blur this line to the point where it may no longer exist. As the Connecticut Supreme Court has recognized:

> In the constellation of family relationships, there are other formally recognized relationships—e.g., siblings, grandparent and grandchild, and aunt or uncle and nephew or niece—and others, less formally recognized but nonetheless just as real in an emotional sense—e.g., stepsiblings, and stepchild and stepparent—that could well, depending on the case, present equally strong claims of loss of consortium.

*Mendillo*, 717 A.2d at 1191. Following our decision today, can we draw any coherent distinction between these relationships in future cases, when a loved one claims an "inherent right" to the society of an injured person?

¶69 In its broad statements about the function of loss of consortium claims to address "injuries to emotional well-being," the Concurrence seems to suggest that every instance of grief or sadness, by definition it would seem, presents a legally cognizable injury. Concurrence, ¶ 42. There is no generalized right to emotional well-being. We have recognized that "[t]he loss of or serious injury to a child, whether an adult or a minor, is no doubt a traumatic experience, but it is one experienced by countless parents every year." *Renville*, ¶ 15. In spite of this, "'life goes on.'" *Renville*, ¶ 15. The same is true when a young adult experiences the loss of or serious injury to a parent.

¶70 As far as the "policy reasons" alluded to, the Concurrence concludes that "the law should not impose such an artificial extinguishment when it comes to the inherent filial right to a parent's affection, aid, and society." Concurrence, ¶ 47. Yes, the age of majority is a legal concept, arbitrarily set at 18 years rather than 19, 16, or 21. That is

not, in itself, reason to deprive it of legal significance. The Concurrence advocates a policy of indefinite childhood. This, too, is bad policy. The law should promote independence in young adults, rather than vesting in them the legal right to have a parent attend to their intangible needs.

¶71 I feel sympathy for Sadee Stucky and her family, and I admire the close relationship Calvin Stucky built with his daughters. Embarking on an independent adult life is a challenging endeavor, and without question, Sadee's path has been made even more challenging by this family hardship. Absent a legally cognizable right, however, I do not believe this Court should create a new cause of action simply to fit the present circumstances.

¶72 If the Court is to recognize such a cause of action, I believe we must clearly define the evidentiary standard to be applied. We must first recognize the distinction between the evidentiary standards we have applied to independent causes of action for loss of consortium and those for determining "just" damages pursuant to the wrongful death statute. In *Keele*, we held that a minor child bringing a cause of action for loss of consortium with an injured parent must establish that the parent has suffered a serious, permanent and disabling mental or physical injury compensable under Montana law, and that the parent's ultimate condition of mental or physical impairment must be so overwhelming and severe that it causes the parent-child relationship to be destroyed or nearly destroyed. 258 Mont. at 162, 852 P.2d at 577. *Keele* required no proof of the nature of the relationship between parent and child, only the degree of injury. This was

appropriate because the child was a minor, and close dependence could therefore be presumed. In *Hern*, we held that a parent claiming damages for loss of consortium with a deceased adult child in a wrongful death action must present significant evidence of an extraordinarily close and interdependent relationship. *Hern*, ¶ 58. *Hern* required no proof of the degree of injury or harm to the relationship. Again, this was appropriate because in a wrongful death, there could be no question that the relationship was destroyed.

¶73    In this case, the party claiming loss of parental consortium is not a minor child, and so a relationship of close dependence cannot be presumed. Similarly, because the injuries are non-fatal, we must require proof of the degree of injury and the resulting damage to the parental relationship. In short, neither the *Keele* standard nor the *Hern* standard is appropriate on its own. The Opinion claims to adopt the *Keele* standard, but in addition to requiring the two elements stated under *Keele*, states that "the plaintiff *may* present evidence of factors including . . . the actual effect the parent's injury has had on the relationship and is likely to have in the future; the child's age; the nature of the child's relationship with the parent; and the child's emotional, physical, and geographic characteristics."[4]    Opinion, ¶ 38 (emphasis added). In *Hern*, we recognized that consideration of the nature of the relationship between an adult and his or her parent was necessary when addressing a claim for loss of consortium damages. The Court seems to find that consideration appropriate here, to some degree—but doesn't actually *require*

_____

[4] The "geographic characteristics" of the plaintiff presumably refer to "where the plaintiff physically resides in relation to the injured parent."

45

any evidence of the nature of the relationship, and provides no guidance on the minimum showing a plaintiff must make to have the cause of action presented to a jury. Opinion, ¶ 38.

¶74 The "standard" enunciated by the Court is not only legally confusing and inadequate, it draws a wholly unsupported distinction between the rights of a parent and the rights of an adult son or daughter in identical circumstances. The Court rejects the *Hern* standard, which we have already applied to the relationship between an adult and his or her parent in the context of a wrongful death action. Opinion, ¶¶ 35-36. Instead, the Court claims to apply the standard we set out for an independent loss of consortium claim by a minor child in *Keele*, concluding there is "no reason to adopt a different standard" when the plaintiff is an adult. Opinion, ¶ 36. The Court reasons that "it is only the age of the child that is different," Opinion, ¶ 36, inexplicably ignoring the fact that age is precisely what makes the difference, legally, between a child and an adult. Section 41-1-101, MCA. It is not "only the age of the child" at issue: it is the fact that at a certain age, one is no longer a child. Under the law, that is reason enough to adopt a different standard. *See, e.g.*, *Mode v. Barnett*, 361 S.W.2d 525, 530 (Ark. 1962) ("The adult child who loses a parent is generally better able to withstand the blow than a minor child whose close and constant association with the parent in the home creates considerably more of a binding tie."); *Smith*, 57 S.W.3d at 843 ("[T]here is a legitimate basis for limiting recovery for loss of parental consortium to minor or unemancipated children."); *Theama*,

344 N.W.2d at 522 ("[T]he minor is one whose relationship is most likely to be severely affected by a negligent injury to the parent.").

¶75 The Court declares that "an adult child's reliance on a parent for guidance and support is likely different from the parent's reliance on a child that we discussed in *Hern*. No 'extraordinarily close and interdependent relationship' is required for an adult child to be harmed, or even devastated, by the effective loss of a close parent-child relationship." Opinion, ¶ 38. Setting aside the circuitous statement that a close relationship is not required for one to be devastated by the loss of a close relationship, the Court implies that a parent is comparably unlikely to be devastated by the loss of a close relationship with an adult son or daughter. The Court presents no support for this assertion. I find equal arguments to the contrary: in the course of life, it is natural and expected that one will eventually suffer the loss of one's parents. It is not expected, at any age, that one will lose a child. It is not for this Court to categorically declare one loss more devastating than the other.

¶76 In defining the standard to govern an adult's cause of action for loss of consortium with a non-fatally injured parent, if the Court should recognize such a cause of action, I would uphold the standard we have previously applied to the parent-child relationship when it exists between two adults, and require evidence of an extraordinarily close and interdependent relationship. *Hern*, ¶ 58. Because a non-fatal injury is involved, I would also require proof that the parent has suffered a serious, permanent and disabling mental or physical injury compensable under Montana law, and that the parent's ultimate

condition of mental or physical impairment must be so overwhelming and severe that it causes the parent-child relationship to be destroyed or nearly destroyed. *Keele*, 258 Mont. at 162, 852 P.2d at 577. Requiring the plaintiff to demonstrate the severity and genuineness of his or her injury as a threshold matter is also consistent with our approach to causes of action for other intangible injuries, such as emotional distress. *See Sacco v. High Country Indep. Press*, 271 Mont. 209, 232, 896 P.2d 411, 425 (1995).

¶77     For the reasons stated above, I dissent.


                                        /S/ LAURIE McKINNON